DOUCET, Judge.
Defendant, Earnest Cunningham, was charged by bill of information with three counts of molestation of a juvenile, a violation of La.R.S. 14:81.2. The alleged acts of molestation involved defendant’s three stepchildren. Following trial by jury, defendant was found guilty of two counts of molestation of a juvenile and one count of attempted molestation of a juvenile, a violation of La.R.S. 14:27 and 14:81.2. On the two counts of molestation, defendant was sentenced to serve four and one-half years at hard labor with the sentences to run concurrently. On the count of attempted molestation, defendant was sentenced to serve five years at hard labor. The sentence was suspended and defendant was placed on supervised probation for five years with special conditions.
FACTS
At the time the offenses were committed the defendant was living in a mobile home *46 in Jeanerette with his wife, Deborah, and her three minor children from a previous marriage. The names of the children and their ages at the time of defendant’s arrest were: Jane, seven, Tim, six, and Mark, four.[1]
On April 25, 1985, Mrs. Cunningham noticed Mark manipulating his genitals with his hands inside of his trousers. She questioned him, and, subsequently, the two other children. It came to light that the defendant had been molesting Mark, Tim, and to a lesser extent, Jane, for some time. The next day, while defendant was working, Mrs. Cunningham and the three children moved out of the trailer into her mother’s home. A subsequent investigation led to defendant’s arrest.
At trial, Mark testified that at night when he was in bed sleeping, the defendant would come in the room, pull down his bedcovers, remove his pajamas, and pinch, play with, and suck his (the child’s) penis. He also stated that the defendant would place his own penis in his (the child’s) mouth. According to Mark, the defendant would do these things to him a lot and that he told him not to tell anyone about it or he would whip him. Shown a male doll, Mark pointed out the doll’s penis for the court. He ended by stating that no one told him what to say in court.
Tim also testified that when he was in bed asleep (he slept in the same room as Mark) the defendant would come in, pull down his pajamas, and place his mouth on his (the child’s) penis. He also stated that the defendant would place his own penis in his (the child’s) mouth. However, the child stated that he would be asleep when this latter activity occurred and that he only knew it happened because the defendant told him after he awoke. Tim testified that the defendant did these things to him often and that he warned him not to tell anyone or he would whip him.
Tim was shown a drawing which his mother had previously identified as one that he had made and shown to her approximately one week after the incidents of molestation came to light. Tim confirmed that he drew the picture and that it depicted the defendant “sucking” his (the child’s) penis and himself “sucking” the defendant’s penis. Tim was also shown a male doll and identified the penis. He also concluded his testimony by stating that no one told him what to say in court.
Jane testified that the defendant came to her while she was in bed asleep and put his hand under her nightgown and touched her. Shown a female doll she pointed to its vaginal area when asked where the defendant had touched her. Jane stated that the defendant threatened to whip her if she told anyone about him touching her. She remembered defendant doing this to her on only four occasions. She ended by stating that she was telling the truth.
Mrs. Cunningham testified that before the incidents of molestation became known, she and the defendant got along well. She described him as a good person, a loving husband, and a good stepfather. However, she had no reason to doubt the veracity of her children’s testimony. She stated that there was never any pornography around the home and that she never had sex in front of the children. She could not think of anything which would have influenced the children to fabricate these allegations.
The defendant flatly denied doing any of the acts alleged. In an attempt to establish a motive on the part of his wife to have the children fabricate these stories, the defendant testified that he once informed her that she would not get to spend any of the proceeds he expected to receive from a lawsuit for personal injuries. He claimed her response was, “Watch me.” Mrs. Cunningham did not remember having such a conversation.
The jury found the defendant guilty of the molestation of Tim and Mark, and guilty of the attempted molestation of Jane. On appeal he cites three assignments of error.
*47 ASSIGNMENT OF ERROR NO. 1:
Defense counsel’s first assignment of error asserts the trial court erred in denying defendant’s motion for a continuance based upon the state’s failure to disclose medical and psychological examinations upon the victims of these purported crimes. On July 9, 1985, a motion for discovery and inspection was filed by defense counsel. In paragraph five of the motion, defendant requests disclosure be made of any books, papers, etc. which are favorable to the defendant and which are material and relevant to the issue of guilt or punishment. Paragraph six requests that defendant be allowed to inspect and copy any reports of physical or mental examinations made in connection with this case which are in the possession, custody, control or knowledge of the district attorney.
On July 30, 1985, answers to the motion for discovery were filed on behalf of the state. In response to paragraphs five and six of the motion, the state responded it had no such information. The trial of this matter was scheduled for June 16, 1986, a Monday. On Friday, June 13, 1986, the district attorney’s office, through counsel for the defendant, learned of the existence of reports prepared by Dr. Walter Scott and Dr. Henry Lagande in connection with this case. Upon learning of the existence of the reports, the district attorney’s office obtained copies and immediately provided defense counsel with copies.
Because these reports were obtained on the eve of trial, defense counsel filed a motion for continuance on the grounds of inability to develop information contained in the reports due to the timing of their disclosure. Defense counsel’s motion for continuance was denied by the trial judge for several reasons. First, although the reports were in the custody of a state agency, the Department of Health and Human Resources, the district attorney’s office could not be “bound by the knowledge of what’s in every state agency.” The district attorney’s office was unaware of the existence of these reports until defense counsel informed the district attorney’s office of their existence. A second reason given by the trial judge for denying the motion was that, given the defense counsel’s knowledge that the children had been examined, defense counsel could have made efforts to obtain the reports.
La.C.Cr.P. art. 712 states “a motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor.” A trial judge’s ruling on a motion for continuance will not be reversed except upon a showing that he abused his discretion and defendant was prejudiced by the ruling. State v. Knighton, 436 So.2d 1141 (La.1983). Reviewing the reasons given by the trial judge in ruling on the motion, it cannot be said he abused his discretion in denying the motion.
While the state’s duty to disclose is a continuing one, State v. Downing, 451 So.2d 1221 (La.App. 2nd Cir.1984); State v. Ray, 423 So.2d 1116 (La.1982), the state cannot disclose what it does not know exists. The reports were in the custody and control of the Department of Health and Human Resources, and the district attorney’s office was unaware of their existence. In fact, the district attorney’s office only learned of their existence through defense counsel.
The trial judge indicated to defense counsel that counsel could have contacted these doctors directly as defense counsel knew the children had been examined by the doctors. Defense counsel responded that he did in fact try contacting these doctors but was unsuccessful in obtaining any information as the doctors invoked the doctor-patient privilege. This contact was apparently made some time before the Thursday before trial when counsel learned of the existence of the reports. In responding to defense counsel’s attempted justification, the trial judge stated defense counsel could have sought the assistance of the district attorney’s office at an earlier date, as it was with the assistance of the district attorney’s office that the later discovered reports were ultimately released.
Defendant correctly points out that Dr. Scott’s examination of each child revealed *48 no physical evidence of sexual abuse. However, it is extremely unlikely that any of the acts of molestation or attempted molestation for which defendant was convicted would be evidenced by physical trauma. Fellatio and manual manipulation of the boys’ penises would not ordinarily result in visible tissue trauma. Jane only testified that defendant “touched” her vaginal area and the defendant was only convicted of her attempted molestation, meaning the act was not completed. The report does contain a notation by Dr. Scott, a pediatrician, that Jane denied to him, her mother, and the social worker, that the defendant abused her. However, the reports of Dr. Lagande, the psychologist who examined the children, states that Jane related to him acts of sexual abuse perpetrated upon her by the defendant.
In view of the evidence as a whole, we are unable to say that the denial of defendant’s motion for a continuance was an abuse of the trial court’s discretion. We therefore find no merit to this assignment of error.
ASSIGNMENT OF ERROR NO. 2:
As assignment of error number two, defense counsel contends the evidence introduced at trial was insufficient to support the verdict. The proper standard for reviewing the sufficiency of the evidence is “... whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasons [sic] doubt.” Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), State v. Honeycutt, 438 So.2d 1303 (La.App. 3rd Cir.1983), writ denied 443 So.2d 585 (La.1983).
The essential elements of the crime of molestation of a juvenile, La.R.S. 14:81.2, are:
1. Commission by anyone over the age of seventeen
2. of any lewd or lascivious act
3. upon the person or in the presence of
4. any child under the age of seventeen
5. where there is an age difference of greater than two years between the two persons
6. with the intention of arousing or gratifying the sexual desires of either person
7. by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile.
The essential elements of attemped molestation of a juvenile, La.R.S. 14:27 and 14:81.2, are:
1. A person with the specific intent to commit a crime
2. does or omits an act
3. for the purpose of and tending directly toward the accomplishing of his object, the molestation of a juvenile, the elements of which are set forth above.
Defendant’s age at the time of the offense, twenty-five, was established through defendant’s own testimony. The ages of the children were established through their own testimony, as well as the testimony of their mother. The age difference between defendant and each of the three children is well in excess of the two years required by the statute.
All three children were very specific and consistent within their own testimony as to the acts defendant did to them. While defendant denies performing any such acts, the testimony of the three children and their mother clearly indicates defendant did in fact perform these acts of molestation and attempted molestation upon these children. Defendant exercised control and supervision of these children and told them not to tell their mother about these acts or otherwise they would be whipped by him.
Defense counsel persistently attempted to show that these children were coached by their mother or others on what to say at trial, however, the children consistently denied having been told what to say. Defense counsel also attempted to create a motive for Mrs. Cunningham to coach the children’s testimony. However, as previously discussed, there is no indication that the testimony of any of the children was fabricated.
*49 From the evidence adduced at trial, it can be said that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, this assignment of error lacks merit. ASSIGNMENT OF ERROR NO. 3:
By defense counsel’s third assignment of error he contends that the sentence imposed is excessive and constitutes cruel and unusual punishment. In the 1974 Constitution, art. 1, § 20 was amended to prohibit excessive punishment as well as cruel and unusual punishment. The Supreme Court in State v. Sepulvado, 367 So.2d 762 (La.1979) held “... the imposition of a sentence, although within the statutory limit, may violate a defendant’s constitutional right against excessive punishment that is enforceable by this court on appellate review of his conviction.” State v. Cox, 369 So.2d 118 (La.1979) overruled jurisprudence holding excessiveness of a sentence may not be reviewed in the absence of formal objection.
The analysis of an excessive sentence claim is two-prong. “First, the record must show that the trial judge took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1 in determining the sentence. Second, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of defendant.” State v. Nelson, 449 So.2d 161 (La.App. 4th Cir.1984); La.C.Cr.P. art. 894.1 does not require the trial judge to articulate every aggravating and mitigating circumstance, however, the record must reflect that the factors have been considered and that the sentence was tailored to fit the particular defendant and his particular crime. State v. Cox, 474 So.2d 523 (La.App. 3rd Cir.1985).
Turning to the first prong of the analysis, it must be determined whether the trial judge in the present case complied with La.C.Cr.P. art. 894.1. To assist the judge in particularizing the sentence to the defendant, a pre-sentence investigation was ordered. The report resulting from the investigation was made available to defense counsel, and the prosecution and defense counsel were given an opportunity to comment.
The record clearly establishes that the trial judge adequately considered the criteria set forth in Art. 894.1. The trial judge stated, “In considering the evidence that I heard at the trial and the report I received as well as anything else that’s come to my attention, I have reviewed those in light of the provisions of Article 894.1 of the Code of Criminal Procedure of this state in considering what is an appropriate sentence in this case.” Several mitigating factors were specifically mentioned by the trial judge. First, defendant has no prior criminal record and has led a fairly good life. Second, numerous letters of recommendation were received on behalf of defendant and considered. The trial judge noted the value of some of these letters was diminished by the fact that the writers acknowledged they did not know defendant but rather knew his family. Third, the trial judge considered the effect on the victims and felt they would not be scarred from this.
Turning to the second prong of the analysis, it must be determined “... whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.” State v. Nelson, supra. “The trial judge has wide discretion in imposing sentences within statutory limits. Absent a manifest abuse of that discretion, the sentence will not be set aside as excessive.” State v. Meshell, 473 So.2d 935 (La.App. 3rd Cir.1985). “In determining whether the penalty is grossly disproportionate to the offense, the appellate court must ‘consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is disproportionate to the crime committed as to shcok our sense of justice’.” State v. Meshell, supra.
For the offenses committed, defendant could have been fined up to $25,000 and imprisoned, with or without hard labor, for up to twenty-five years. The sentence imposed for the two counts of molestation was four and one-half years on each count; however, the sentences are to run concurrently. On the attempted molestation, de *50 fendant was sentenced to five years at hard labor; however, the sentence was suspended and defendant was placed on probation. While defendant could have been imprisoned up to twenty-five years, he will be imprisoned for only four and one-half years because the molestation sentences are to run concurrently and the attempted molestation sentence was suspended. The harm to society caused by the commission of this offense was accurately noted by the trial judge when he stated, “... this type of offense, which we find so prevalent today, and which is really eating at the fabric of our morals and our society....”
When consideration is given to the punishment, the crime, and the harm to society, defendant cannot reasonably assert the penalty is disproportionate to the crime as to shock our sense of justice.
Defense counsel argues on appeal that the sentence imposed for the two counts of molestation should have been suspended as was the sentence for the attempted molestation. La.C.Cr.P. art. 893 places the decision on whether to suspend a sentence within the discretion of the trial court.
This assignment of error lacks merit.
For the reasons assigned, the convictions and sentences of the defendant are affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs.

. In this opinion we will use fictitious names in an attempt to protect the privacy of the children.