JiWOODARD, Judge.
The defendant, Donald Gallow, was convicted of one count of second degree murder and sentenced to life imprisonment. The defendant appeals his conviction.
FACTS
Between the hours of 6:00 p.m. on October 7, 1994, and 3:00 a.m. on October 8, 1994, in the Parish of Evangeline, the victim, Ray Tremie, was stabbed to death in his home. There were no eyewitnesses to the murder, but police found the fingerprints of the defendant, Donald Gallow, at the murder scene. Gallow at first told police he had not been to Tremie’s house since October 6, 1994. He subsequently admitted to having found Tre-mie dead at his house, but denied having killed him. Police arrested defendant based on the fingerprints, Gallow’s inconsistent statements, and the testimony of a couple of witnesses as to alleged statements of Gal-low’s.
On December 13, 1994, the defendant was charged by bill of information with one count of second degree murder, a violation of La. R.S. 14:30.1. On December 16, 1994, defendant was arraigned and pled not guilty to the charge. Defendant was tried by jury on July 10-12, 1995, and convicted as charged. On July 21, 1995, defendant |2was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant now appeals the conviction.
ERRORS Patent
La.Code Crim.P. art. 920 provides the scope of review on appeal, as follows:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence.
In accordance with this article, we review all appeals for errors patent on the face of the record. After a careful review of the record, we have found no errors patent.
Sufficiency of the Evidence
Gallow argues the evidence adduced at trial was insufficient to have supported his conviction. When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is the role of the fact finder to weigh the respective credibility of the witness, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
In order to obtain a conviction, the state must prove the elements of the crime beyond a reasonable doubt. The defendant was convicted of one count of second degree murder in violation of La.R.S. 14:30.1, which sets forth, in pertinent part, that:
IgA. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated *732 arson, aggravated burglary, aggravated kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
As the defendant correctly notes, the prosecution’s case was based upon circumstantial evidence. Direct evidence clearly showed Gallow was in the victim’s house at or after the murder; i.e. bloody palmprints, fingerprints, and footprints. Also, in an oral statement to a police officer, Gallow said he had found Tremie’s bloody corpse. The murder weapon was never found, and there were no eyewitnesses. The prosecution presented testimony indicating the apparently unemployed defendant had several $100.00 bills in his possession late Saturday night (October 8), its case theory being that Gallow slew Tremie, a small-businessman, for the cash.
Witnesses Angela Jack and Elvina La-Fleur indicated that Gallow had four rocks of crack cocaine when they first saw him Saturday night. Jack testified that the defendant handed her $140.00 for more crack during the course of the evening. LaFleur estimated that the defendant went through approximately $450.00 worth of crack that night.
However, the state never tied the $100.00 bills, or the large wallet in which they were located, to the victim. It was not clear that Tremie was even robbed. Additionally, when the corpse was discovered, police found $525.00 cash in the pants pocket; the wristwatch had not been taken either. The state argued that the corpse was lying with the money in the rear pocket nearest the floor, thus it was explainable that money was left with the body. The defendant’s case consisted of two joint stipulations: he received $150.00 from attorney Billy Sandoz on October 5 (the Wednesday before the murder) and a $116.00 weekly worker’s compensation check the same day. There was no testimony indicating Gallow had an unusual amount of money when he was arrested.
UThe prosecution also emphasized the defendant’s inconsistent accounts of his whereabouts the weekend of the murder. On October 9, he told the police that he had not seen Tremie at all during the weekend; on October 10, he told them that he had last seen Tremie on October 6, the Thursday before the murder. Finally, on October 27, he stated that he had walked into Tremie’s house and found the corpse lying on the floor in “lots of blood.” The defense argued that the variations stemmed from simple fear of being linked to a heinous crime.
Ultimately, the state’s case rested upon two main points: the evidence that the defendant was in Tremie’s house (and contacted Tremie’s blood) during or after the murder, and his possession of an unusual amount of cash within a short time period after the murder.
La.R.S. 15:438 governs the analysis of circumstantial evidence:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
Incorporating this under the Jackson standard, an appellate court must determine that viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact would have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Honeycutt, 438 So.2d 1303 (La.App. 3 Cir.), writ denied, 443 So.2d 585 (La.1983). Additionally, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982).
Although no direct evidence clearly establishes that Gallow killed Tremie, or even that he robbed Tremie, we find that there is no reasonable hypothesis of innocence. As the prosecutor pointed out during closing arguments, police had to break into Tremie’s house because it was locked. Gallow never explained how he got into the house, or how or why he would have locked it behind him after finding Tremie’s corpse. Thus, while a hypothesis of innocence exists, we find it does not accord with reason and common *733 experience. Therefore, this assignment has no merit.
IsAdmission of Police Notes
Defendant contends that the trial court erred in admitting into evidence police notes of oral statements made by defendant to police officers on October 9, 10 and 27, 1994. In each of these statements, Gallow denied involvement in the murder; he twice denied seeing the victim at all during the weekend of the murder. Finally, on October 27, he stated he had walked into the victim’s home and found his bloody body.
Gallow’s current arguments, like his trial objections, are based upon discovery rules. The defendant filed his pre-trial discovery motion on March 1, 1995; the state responded on April 21. Gallow argues that although the prosecution provided the gist of the defendant’s oral statements (including some not used at trial), it violated Louisiana’s rules of discovery by failing to provide notification of the officers’ written notes of the statements. La.Code Crim.P. art. 716B & C provide:
B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
C. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer.
Furthermore, La.Code Crim.P. art. 718 provides:
Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the' possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
IgThe court may determine whether evidence is subject to the provisions of Paragraph (1) hereof by in camera inspection.
La.Code Crim.P. art. 723, cited in article 718, provides:
Except as provided in Articles 716, 718, 721, and 722, this Chapter does not authorize the discovery or inspection of reports, memoranda or other internal state documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case; or of statements made by witnesses or prospective witnesses, other than the defendant, to the district attorney, or to agents of the state.
In State v. Mims, 94-333 (La.App. 4 Cir. 5/26/94); 637 So.2d 1253, the appellate court held the defendants were entitled to discover contemporaneous, unedited notes taken by F.B.I. agents during interviews of the defendants, subject to in camera inspection by the trial court. However, even if a discovery violation occurs, the error is not reversible when the defendant’s case is not prejudiced. State v. Sanders, 93-1 (La.11/30/94); 648 So.2d 1272.
During the second day of trial, July 11, 1995, Officer Brad Fontenot of the Ville Platte Police Department testified the defendant had made oral statements in Fontenot’s presence on October 9 and again on October 10. According to Fontenot, the defendant claimed not to know anything about the murder; on the ninth, Gallow stated he had not seen Tremie at all during the weekend, and on the tenth he claimed he had last seen Tremie on Thursday, October 6, or during the early morning hours of October 7.
*734 Under cross-examination, Fontenot testified he had neither taken a written statement from the defendant, nor offered to do so. Upon re-direct, the officer was allowed, in open court, to read his notes of Gallow’s oral statement, and the written notes were introduced over defense objection.
The next witness, Lieutenant Danny Fon-tenot of the Ville Platte Police Department, testified as to Gallow’s second and third oral statements, made on October 10 and 27. According to the lieutenant, on October 10, Gallow initially claimed not to have seen the victim since Thursday, October 6. Defendant’s final oral statement was made on October 27; having asked to call a lawyer, Gallow apparently blurted out that he had walked into Tremie’s house and seen him lying in blood. The lieutenant’s notes were then introduced and read by the jury over defense objection. |7In allowing use and admission of the police notes of the oral statements, the lower court acknowledged, “this is unorthodox, but I find it nonprejudicial.”
On appeal, the defendant argues that lack of advance notice as to the existence of the police notes “rendered the defendant defenseless in planning and preparing for trial.” However, as noted by the prosecution — both at trial and on appeal — the written notes were consistent with the officers’ trial testimony. Neither the notes nor the testimony were inconsistent with the information provided on discovery. Thus, while the existence of the notes may have been a surprise to the defense team, the information within those notes did not present a surprise. Therefore, no prejudice resulted to the defendant’s case. For the reasons discussed, this assignment lacks merit.
The Ceime Scene Diagram
Gallow also contends that the trial court erred by allowing the use of a crime-scene diagram that was prepared by a testifying expert but not provided to the defense on discovery.
At trial, the state produced the diagram for reference by the crime lab technician during his testimony. Over defense objection, the court admitted the diagram into evidence, characterizing it as a “visual aid to use at trial.” The defendant correctly notes that crime-scene reports, including the diagram, are subject to discovery under State v. Lingle, 461 So.2d 1046 (La.1985). Furthermore, he argues that because the state’s case relied on circumstantial evidence, the information contained in the diagram was crucial to proper preparation of a defense.
The record shows the prosecution had no knowledge of the diagram’s existence. Logically, the state could not have provided what it had no knowledge of, and did not possess. See State v. Cunningham, 525 So.2d 44 (La.App. 3 Cir.1988).
Furthermore, the discovery provisions of the Code of Criminal Procedure and Brady impose no obligation upon the State to obtain records over which it has never had custody or control. Documents and other tangible objects which may be helpful to the defense, but which are not within the custody of the State, are properly acquired through the mechanisms of compulsory process and not through pretrial discovery. See LSA-C.Cr.P. Art. 731 et seq.
State v. Badeaux, 95-1563, p. 1 (La.6/30/95); 657 So.2d 1306, 1306. |8On this basis, the state had no duty to produce the diagrams, which it neither possessed nor controlled before trial.
The defense also argues that specific measurements and other details in the diagram were crucial to a proper defense of the state’s highly circumstantial case; certainly the diagram would have helped such preparation. However, the defendant has failed to show what specific or actual prejudice he suffered from not receiving the diagram before trial. As the state points out, court recessed at 5:00 p.m. the day the lab technician testified; thus Gallow had the rest of the evening to review the diagram (and the testimony) before cross-examining the technician the next day. Because the defendant has not shown any prejudice on this issue, we find that this assignment is without merit.
SUPPLEMENTAL ASSIGNMENTS OF ERROR
The defendant, Donald Gallow, has submitted a pro se brief containing two supplemen *735 tal assignments of error. As they amount to amplifications of the original assignments, we will address them in the interests of justice, and of judicial economy.
Supplemental Assignment of Ereor Number One
By his first assignment of error, the defendant calls attention to a potentially incriminating statement that appears in the record and was made during a bench conference: “Ray had the key in his mouth that’s why I had to cut his throat.” The court ruled this was inadmissible hearsay testimony because the witness did not personally hear the statement. Thus, the jmy never heard the statement. Therefore, this assignment has no merit.
Supplemental Assignment of Error Number Two
Under this assignment, the defendant merely amplifies his counsel’s argument regarding insufficiency of the evidence. He also attacks the credibility of the two witnesses who saw him with “several” $100.00 bills, Elvina LaFleur and Angela Jack.
A determination of the weight of evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of Iscredibility of the witness and is a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.), writ denied, 507 So.2d 226 (La.1987).
A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. See State v. Mussall, 523 So.2d 1305 (La.1988). Under the foregoing law and for the same reasons we have already found the evidence sufficient to sustain the defendant’s conviction, we find that this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the defendant’s conviction is affirmed.
AFFIRMED.