693 So.2d 305 (1997)
STATE of Louisiana, Appellee,
v.
Michael STELLY, Defendant-Appellant.
No. CR96-1296.
Court of Appeal of Louisiana, Third Circuit.
April 30, 1997.
*306 Gary C. Tromblay, Asst. Dist. Atty., Opelousas, for State.
William Tracy Barstow, Opelousas, for Michael Stelly.
Before DECUIR, AMY and GREMILLION, JJ.
AMY, Judge.
This appeal arises from the conviction and sentencing of the defendant, Michael Stelly, for possession of cocaine with intent to distribute, a violation of La.R.S. 40:967(A)(1). The defendant now appeals both his conviction and subsequent sentencing. For the following reasons, we affirm.

DISCUSSION OF THE RECORD
The defendant's conviction for possession of cocaine with intent to distribute stems from an incident which occurred on June 24, 1995. Officer Roylis Gallow, a detective in the narcotics division of the Opelousas Police Department, testified that, on that date, while in his police car, he noticed the defendant driving a brown vehicle. Officer Gallow stated that he knew the defendant and further knew that he did not have a driver's license. Despite the officer's use of his vehicle's *307 lights and sirens, the defendant did not immediately stop his vehicle. Officer Gallow stated that, while he was following the defendant's vehicle, he could see upper body movement from the defendant and the vehicle's passenger and, further, that the two were exchanging words. He testified that he became suspicious and called for assistance.
Officer Gallow stated that the defendant stopped after a four-tenths to six-tenths of a mile pursuit and that, after the vehicle was stopped, he saw the defendant make movements indicating that he was taking something from his pocket and then extending his arm towards the passenger. The defendant then exited the vehicle. Officer Gallow testified that, while he was meeting the defendant, he saw the passenger "stuff" the object retrieved from the defendant into the air conditioner vent. The record reveals that the passenger was the defendant's brother, Reginald Stelly (Reginald). Officer Gallow stated that after he saw Reginald stuff the object into the vent, he asked him to exit the vehicle.
The record reveals that the back-up vehicles soon arrived and that the defendant was initially arrested for driving without a license. However, after the other officers arrived, the vehicle was searched. The search revealed that the object in the air conditioning vent was a piece of plastic bag containing fifteen rocks of what appeared to be crack cocaine. Both men were arrested at that time.
On August 8, 1995, a bill of information was filed charging the defendant with one count of possession of cocaine with the intent to distribute, a violation of La.R.S. 40:967(A)(1). The defendant waived formal arraignment and entered a plea of not guilty. Following a jury trial on January 23, 1996, the defendant was found guilty as charged.[1] The trial court subsequently sentenced the defendant to thirty (30) years at hard labor, to be served consecutively to any other sentence the defendant might be serving. The defendant now appeals his conviction and sentence. He assigns the following as error: (1) The evidence presented by the State is insufficient to reasonably permit a finding of guilt; (2) The trial court erred in allowing into evidence the video taped statement of Reginald Stelly when the defendant was not given advance access to the tape; (3) The trial court erred in refusing to accept several of the defendant's requested Special Jury Instructions; and (4) The trial court erred in imposing a constitutionally excessive sentence.

ANALYSIS

Errors Patent
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find several errors patent.
The minutes of the defendant's arraignment indicate that he pled not guilty to a charge of distribution of cocaine. However, the defendant was actually charged with possession with the intent to distribute cocaine. This error, contained in the arraignment minutes, was resolved and corrected in the minutes of the defendant's trial, which contain the notation: "The minutes of August 11, 1995 are amended to reflect the charge of: Possession with the Intent to Distribute Cocaine."
We conclude that, even if the defendant pled to the wrong charge at arraignment, he has waived his right to now appeal this as he failed to object at any point in the proceeding.[2] La.Code Crim.P. art. 555 provides:
Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without *308 objecting thereto, and it shall be considered as if he had pleaded not guilty.
Further, the defendant has not alleged lack of notice to the charge of possession of cocaine with the intent to distribute.
We also note that the original bill of information was amended to reflect the correct trial court docket number and that the defendant was not rearraigned following this correction. However, we conclude that this was not a substantive amendment and, therefore, the defendant was not entitled to rearraignment. See State v. Jones, 587 So.2d 787 (La.App. 3 Cir.), writ denied, 590 So.2d 78 (La.1991).
Finally, we note that although the defendant was not charged with attempted possession with the intent to distribute cocaine, the bill of information contained a citation to an attempt statute, La.R.S. 40:979. La.Code Crim.P. art. 464 provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
This court has found that if a bill of information states the essential facts of the offense charged, the defendant does not object to any error in the bill of information, and the defendant does not claim surprise or prejudice, any error in the bill of information is harmless. State v. Morris, 614 So.2d 180 (La.App. 3 Cir.1993).
The bill of information in the present case states the essential facts of the offense charged. Furthermore, the defendant has not claimed surprise or prejudice. Nor did the defendant object to the trial court's repeated referrals to both the charge and the conviction as possession with intent to distribute. Accordingly, we find this error harmless.

Sufficiency of the Evidence
By this assignment the defendant claims that the verdict is contrary to the law and evidence because the evidence in this case was insufficient to sustain a verdict. The defendant argues that the evidence was insufficient to prove that he constructively possessed the cocaine and that he intended to distribute the cocaine.
When the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King 436 So.2d 559 (La. 1983); State v. Duncan, 420 So.2d 1105 (La. 1982); State v. Moody, 393 So.2d 1212 (La. 1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and, therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino, 436 So.2d 559.
In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. The defendant was convicted of possession of cocaine with the intent to distribute, a violation of La.R.S. 40:967(A).
La.R.S. 40:967(A) states, in pertinent part:
[I]t shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II[.]
Cocaine is classified as a Schedule II drug under La.R.S. 40:964.

Possession of the Cocaine
The State is not required to show actual possession in order to convict, but only that the defendant exercised dominion and *309 control over the illegal substance. State v. Trahan, 425 So.2d 1222 (La.1983). In a recent opinion, a panel of this court concluded the following with regard to constructive possession of narcotics:
Neither the mere presence of the defendant in an area where drugs have been found nor the mere fact that he knows the person in actual possession is sufficient to prove constructive possession. Being a resident of the premises where drugs are found is not in and of itself sufficient to prove constructive possession. Notwithstanding, a person found in the area of contraband can be considered in constructive possession if it is subject to his dominion and control, and each case turns on its particular facts. The defendant can have constructive possession if he jointly possesses the drugs with a companion and if he willfully and knowingly shares with his companion the right to control the drugs.
The following factors should be considered in determining whether defendant exercised dominion and control so as to constitute constructive possession: defendant's knowledge that illegal drugs were in the area; the defendant's relationship with the person in actual possession; the defendant's access to the area where the drugs were found; evidence of recent drug use; the defendant's proximity to the drugs; and any evidence that the area was frequented by drug users.
State v. Laws, 95-593, p. 3-4 (La.App. 3 Cir. 12/6/95); 666 So.2d 1118, 1121, writ denied, 96-0089 (La.9/13/96); 679 So.2d 102.
In State v. Carouthers, 607 So.2d 1018 (La.App. 3 Cir.1992), writ granted, 613 So.2d 983 (La.1993), vacated on other grounds, 618 So.2d 880 (La.1993), this court found that there was enough evidence to establish the defendant exercised dominion and control over drugs where the defendant was present in a hotel room registered in his name while another man sold drugs to an undercover agent.
La.R.S. 14:24 defines principal as:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime....
To support a defendant's conviction as a principal, the State must show that the defendant had the requisite mental state for the crime. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). "A defendant may be guilty as a principal in the crime of distribution if he aids and abets in the distribution or indirectly counsels or procures another to distribute the controlled dangerous substance." State v. Pollard, 93-1960, p. 14 (La.App. 4 Cir. 7/14/94); 640 So.2d 882, 888-89.
Our review of the record indicates that the trial court was presented with considerable evidence related to the defendant's possession of the cocaine.
As previously discussed, Officer Gallow testified that, as he was following the defendant, he saw the defendant make movements indicating that he was extending his arm to his brother and that after the vehicle was stopped, he observed Reginald stuff something into the air conditioning vent. A substance later revealed to be crack cocaine was found in that vent.
Additionally, Chief of Police Larry Caillier testified that he responded to Officer Gallow's call for assistance and then assisted in the inventory search of the vehicle. Chief Caillier confirmed the discovery of the crack cocaine in the vent. Finally, Chief Caillier testified that when advised of the discovery of the drugs, the defendant shouted "Oh, shit!" Chief Caillier then stated that the defendant head-butted Officer Jimmy Joseph Broussard and began to run. According to Chief Caillier, Reginald shouted for the defendant to stop resisting. Chief Caillier further testified that Reginald yelled "`We fucked up,' and `Mike, stop resisting and cut all of that out and let's just take our licks.'"
Reginald, who pled guilty to possession of cocaine with the intent to distribute as a result of the incident, also testified at his brother's trial. He initially testified that the defendant did not know of the presence of the drugs until they were pulled over, but *310 then stated that the defendant knew of them while they were being followed by Officer Gallow. Reginald stated that although the defendant wanted Reginald to run with the drugs, Reginald stuffed the drugs into the vent. With regard to the struggle described by Chief Caillier, Reginald stated that he saw the defendant struggling with the officers but did not think that the defendant was trying to run. He also testified that he did not tell the defendant to stop resisting because they "just fucked up," but only remembered telling the defendant to "chill out."
Reginald was questioned about a statement he gave the police. At trial, Reginald denied telling Officer Gallow in his statement that the drugs belonged to the defendant. Although he remembered telling Officer Gallow that the defendant had the cocaine and had shown it to him the day before, Reginald claimed at trial that he was lying to Officer Gallow and, on cross-examination, testified that the officers involved told him he would not go to jail if he said certain things. Also during cross-examination, Reginald admitted that he was smoking crack on the day of the incident.
The defendant testified on his own behalf and denied having any drugs on him on the day in question. He stated that he began to get nervous because he did not have a driver's license and his brother was acting very nervous. He testified that he told his brother, "If you got some dope jump out and run, leave now." According to him, Reginald pulled the drugs out and put the bag on the seat. The defendant stated that he then exited the truck and Officer Gallow asked him for his driver's license, which he did not have.
On cross-examination, the defendant admitted he had previously been convicted once for possession of cocaine, twice for distribution of cocaine and once for possession of cocaine with the intent to distribute.[3] As for the incident at issue, the defendant claimed the officers were out to get him. The defendant also denied trying to run when the officers informed him about the cocaine.
We conclude that the testimony supports a finding that the defendant possessed the drugs in question and was a principal to the crime. Officer Gallow stated that he saw the defendant making motions which indicated that he was handing something to Reginald and that Reginald then stuffed something into a vent. A search of the vent revealed cocaine. Chief Caillier also testified that, after the defendant was advised of the discovery of the drugs, the defendant tried to run and that Reginald made remarks indicating that they were both involved. Finally, Reginald gave an original statement to the police in which he indicated that the drugs belonged to the defendant and that the defendant had them the previous day.
Regardless of Reginald's statement to the police, the present case supplies many of the constructive possession factors previously set forth in Laws, 95-593; 666 So.2d 1118. If the cocaine, in fact, belonged to Reginald, his testimony at trial indicates that he and the defendant are brothers and that the defendant knew about the presence of the drugs before the truck was stopped. Further, the defendant was seated next to the Reginald in the truck and in close proximity to where the drugs were found. There was, however, no evidence of recent drug use by the defendant.
Considering the evidence in the light most favorable to the State, we find sufficient evidence of either possession or constructive possession of the crack cocaine by the defendant.

Intent to Distribute
The defendant also claims that the evidence does not support a finding that he intended to distribute cocaine.
Again, in Laws, this court discussed what the State must prove with regard to intent.
It is well recognized that the State must prove specific intent to distribute. State v. Roberts, 550 So.2d 1254 (La.App. 4 Cir. 1989), writ denied, 558 So.2d 599 (La.1990). Specific intent can be inferred from the circumstances of the transaction. State v. Myre, 502 So.2d 1105 (La.App. 4 Cir.1987).

*311 Factual circumstances from which the intent to distribute a controlled dangerous substance may be inferred include; previous distribution or attempted distribution by the defendant; the presence of paraphernalia for distribution; possession of an amount sufficient to create a presumption of intent to distribute; and packaging in a form usually associated with distribution rather than personal use.

Id. at 1108
Laws, 95-593 at p. 4; 666 So.2d at 1121.
We find that the evidence supports the jury's finding of intent to distribute. First, the defendant admitted that he had two prior convictions for distribution of cocaine and one prior conviction for possession of cocaine with the intent to distribute.[4] Additionally, Ronnie Trahan, accepted as an expert regarding the dealing of crack cocaine at the street level, testified that a pure user does not normally possess fifteen (15) rocks of crack cocaine, weighing 2.37 grams.[5] He stated that a pure user typically possesses one or two rocks because the users usually have the rock only long enough to consume it. Typically as soon as a user gets the rock, he or she smokes it. He also testified that a user usually carries rocks loose since the user will only have the rock for a short amount of time. Trahan stated that street level dealers often use plastic wrappers to carry their drugs because it is easy to dump the drugs quickly without drawing attention to the bag since it looks like trash.
In State v. Harris, 96-205 (La.App. 3 Cir. 10/9/96); 684 So.2d 1, officers found six (6) rocks of crack cocaine in the defendant's jacket, weighing one and four-tenths grams. The rocks were found in a plastic bag and there was no drug paraphernalia found. The defendant gave a statement to police in which she admitted the drugs were her drugs and she was trying to make some money with the drugs. At trial, the defendant claimed the statement was untrue and that she made the statement because the police were badgering her. Trahan, also qualified as an expert in narcotics investigation of cocaine and distribution of drugs in that case, stated in the Harris that a crack user usually carries a crack pipe on his person and the user's cocaine is never packaged. This court upheld the Harris defendant's conviction for possession with intent to distribute cocaine based on the above facts.
In light of the expert testimony and the defendant's previous convictions in the present case, we find that the evidence supports the jury's finding that the defendant not only possessed the cocaine, but had specific intent to distribute as well. Therefore, the defendant's assignment is without merit.

Video-Taped Statement
The defendant claims the trial court erred in allowing Reginald's video-taped statement to be introduced into evidence. The tape was presented to the jury over an objection that there was neither mention of the video-taped statement in the District Attorney's file at the time of the open file discovery nor at the time of trial.
During the State's direct examination of Officer Gallow, he revealed that he had video-taped Reginald's confession. The defendant's counsel, Tracy Barstow, objected to the introduction of the video tape by stating, "Your Honor, at this time I'm going to object to the introduction of this video tape because there's nothing in the file in reference to a video tape that I was noted to in open file discovery. I would like the jury to be removed and Your Honor to look at the file and see if that is in the file." Barstow stated that he knew the Opelousas Police Department tapes confessions, but assumed there was no video tape of Reginald Stelly's confession since it was not included in the file. In response, Assistant District Attorney Gary Tromblay stated, "In fact, the offense report and the narrative reflects jot-for-jot what's *312 contained in that video tape." Tromblay also stated that "everything that is contained in that video tape is contained in the narrative report, which he had open file discovery." Tromblay admitted the tape was not in the file since he just received it from the Opelousas Police Department.
The trial court read the offense report and wanted to review the video tape. Barstow strenuously objected and when offered the opportunity to view the video with the court, but outside the presence of the jury, stated, "I don't want to watch the tape, get that straight!" Before viewing the tape, the trial court noted that Barstow "voluntarily removed himself from the viewing." Barstow later stated, "I'll admit in the presence of the Court that I excused myself on my own volition." After viewing the tape, the trial court stated, "The Court is satisfied that the tape does properly reflect the scenario outlined in the officer's report, which I have also reviewed, and the Court rules that the tape will be admitted into evidence."
La.Code Crim.P. art. 722 provides:
Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confessions or inculpatory statements made by a codefendant and intended for use at trial. Exculpatory evidence shall be produced under this article even though it is not intended for use at trial.
The defendant cites Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), wherein the Court stated, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady applies to exculpatory evidence, whereas, in the case sub judice, the defendant desired the inculpatory evidence on the video tape.
In State v. Gallow, 95-1555 (La.App. 3 Cir. 9/18/96); 680 So.2d 729, writ denied, 690 So.2d 35, a police officer was testifying when the prosecution attempted to introduce the officer's notes of the defendant's oral statements into evidence. The defendant argued that the lack of advance notice as to the existence of the notes "`rendered the defendant defenseless in planning and preparing for trial.'" Id. at p. 7; 734. This court held that the defendant did not suffer prejudice since "[n]either the notes nor the testimony were inconsistent with the information provided on discovery. Thus, while the existence of the notes may have been a surprise to the defense team, the information within those notes did not present a surprise." Id.
"The state's failure to comply with discovery procedures will not automatically demand a reversal." State v. Burge, 486 So.2d 855, 866 (La.App. 1 Cir.), writ denied, 493 So.2d 1204 (La.1986). "Accordingly, a conviction should not be reversed because of an erroneous ruling on a discovery violation absent a showing of prejudice." State v. Gaudet, 93-1641, p. 6 (La.App. 1 Cir. 6/24/94); 638 So.2d 1216, 1220, writ denied, 94-1926 (La.12/16/94); 648 So.2d 386.
We conclude that the defendant was not prejudiced by the video tape since it was consistent with Reginald's statement, to which the defendant had access. Additionally, the defense counsel was given opportunity to view the tape before it was played for the jury, but refused to do so. Accordingly, we find no error on the part of the trial court.

Jury Instructions
The defendant claims the trial court erred in declining to accept and instruct the jury as to defendant's special jury instructions numbers one (1), two (2), three (3) and four (4).[6]
La.Code Crim.P. art. 807 provides, in pertinent part:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It *313 need not be given if it is included in the general charge or in another special charge to be given.
The special jury instructions submitted by the defendant are, in part, as follows:
SPECIAL JURY INSTRUCTION NO. ONE
Fact that amount of cocaine found in defendant's possession/suitcase was no more than one and one-half (1½ oz.) ounces was more consistent with amounts for his own personal consumption.
Evidence of defendant's possession of 7.75 grams of crack and cocaine was insufficient to establish intent to distribute.

State v. Bourgeois, 406 So.2d 550, (Spr.Ct.1981)

State v. McIntyre, 544 So.2d 86 (La.App. 3 Cir.1989).
SPECIAL JURY INSTRUCTION NO. TWO (2)
Fact that amount of cocaine found in defendant's possession/suitcase was no more than one and one-half (1½ oz.) ounces was more consistent with amounts for his own personal consumption.

State v. Bourgeois, 406 So.2d, 550 (La. 1981).
SPECIAL JURY INSTRUCTION NO. THREE (3)
Evidence of defendant's possession of 7.75 grams of crack and cocaine was insufficient to establish inent [sic] to distribute.

State v. McIntyre, 544 So.2d, 86 (La.App. 3 Cir.1989).
The jury instruction selection was discussed among counsel and the trial judge in open court:
The Court: All right, bear with me just a second. In terms of my denials, I am denying defendant's special jury instruction number one, I am denying number two and number three, which are really incorporated in number one, and I'm denying number seven. My reason for denying number seven is I feel as though it's incorporated in number eight as requested by the defendant, and I have already inserted number eight.
Mr. Tromblay: So you're going to grant four, five, six and eight?
The Court: The ones that I'm going to allow?
Mr. Tromblay: Yes, sir?
The Court: That's four, five, six and eight.
We conclude that the excluded special jury instructions were correctly denied by the trial court since they needed further explanation and by themselves were not wholly correct in this situation.
As support for the instructions, the defendant cites State v. McIntyre, 544 So.2d 86 (La.App. 3 Cir.1989), in which the defendant possessed 7.75 grams of cocaine, 2.01 of which was crack cocaine, wherein the court found that the amount was not enough, by itself, to establish intent to distribute. However, the facts in McIntyre differ from the present case. In McIntyre, the defendant had no prior record of distribution or attempted distribution of cocaine, there was no testimony that the packaging of the cocaine was in any way associated with distribution, or that the defendant had any connection with the scales found in the car. As the instructions needed further explanation, qualification and limitation, we find that the trial court did not err in failing to give the requested jury instructions.

Excessive Sentence
Defendant claims the thirty-year sentence imposed by the trial court was constitutionally excessive.
La.Code Crim.P. art. 881.1(D) provides:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
*314 Our review of the record indicates that the defendant did not file a motion to reconsider sentence, nor did he make an oral motion at the time of sentencing asking the court to reconsider his sentence. We find that the defendant is now barred from raising the excessiveness of the sentence on appeal. State v. Reeves, 613 So.2d 1061 (La. App. 3 Cir.), writ denied, 619 So.2d 543 (La.1993). Therefore, this assignment is without merit.

DECREE
For the foregoing reasons, the conviction and sentence of the defendant, Michael Stelly, are affirmed.
AFFIRMED.
NOTES
[1] After this verdict, a bill of information was filed charging defendant as a habitual offender, second offense, however, according to a letter dated January 21, 1997, from the 27th Judicial District Clerk of Court, no further action has been taken on this bill.
[2] We are unable to determine, after a review of the record, whether the defendant actually pled to the incorrect charge or if the minute entry of the arraignment contained only a typographical mistake. In either event, the defendant failed to preserve this issue for appeal and it is waived.
[3] The defendant's pre-sentence investigation report reveals that the defendant had been convicted twice of possession of cocaine and once of possession with intent to distribute cocaine.
[4] As previously noted, the defendant's pre-sentence investigation report indicates two convictions for possession of cocaine and one conviction for possession with intent to distribute cocaine.
[5] Officer Gallow testified that the plastic found during the inventory search contained fifteen rocks of crack cocaine and crumbs. Laurette Rapp, a forensic chemist, testified that her testing revealed that the substance found was crack cocaine weighing 2.37 grams.
[6] With regard to Special Jury Instruction Number Four, the trial court judge stated, "I'm also going to give defendant number four. I have used, I think basically, number four before if I'm not mistaken, Mr. Barstow, in some of your other charges." Since instruction number four was included in the charge, the defendant's claim regarding this instruction is moot.