755 So.2d 963 (1999)
STATE of Louisiana, Appellee,
v.
Ed Quinney WELLS, Defendant ;Appellant.
No. 99-628.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1999.
*964 Charles F. Wagner, DA, Loren Lampert, ADA, for State.
Joseph Richard Kutch, Pineville, Paula C. Marx, Lafayette, for Ed Quinney Wells.
BEFORE: SAUNDERS, WOODARD, AND DECUIR, Judges.
*965 SAUNDERS, Judge.
On February 11, 1998, Ed Quinney Wells (Defendant), was charged by Bill of Information with possession of a controlled dangerous substance, schedule II (cocaine), with the intent to distribute. Defendant entered a plea of not guilty and was tried by a jury for the offense on February 2-3, 1999. The jury found Defendant guilty as charged. On February 12, 1999, Defendant's motions for post-verdict judgment of acquittal and for a new trial were denied and he was sentenced to ten years at hard labor, the first five years to be served without benefit of probation, parole or suspension of sentence. The sentence was to run concurrent with sentences imposed that same day on unrelated charges.[1] Following sentencing, an oral motion to reconsider the sentence was made and denied. Defendant now appeals his conviction, alleging four assignments of error.

FACTS
On May 12, 1997, Officer Kary Beebe received an anonymous phone call that indicated that a tall, black male with plats in his hair was selling drugs at the 700 block of Leland Street. Officer Beebe and his partner, Officer Van Dyke, drove to the area and observed Defendant, who fit the description, riding a bicycle on the side of the street. Officer Van Dyke pulled up along side Defendant, and as Officer Beebe was in the process of rolling down his window to ask Defendant his name, Defendant got off his bike and took off running. Officer Beebe got out of the car and gave chase. During the chase, Officer Beebe saw Defendant throw a plastic bag up in the air and Officer Beebe stopped to pick it up. Meanwhile, Officer Van Dyke had circled the perimeter of the chase in the car and eventually detained Defendant. The bag contained nine pieces of a white, rock-like substance which was later chemically tested and determined to be crack cocaine. Defendant was arrested and a search of his person revealed $15.00 in food stamps and $146.00 in cash.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, two errors patent were found.
First, the trial court imposed an illegal sentence. The first five years of Defendant's sentence was imposed without benefit of probation, parole or suspension of sentence. Although the penalty provision for possession of cocaine with the intent to distribute was amended effective August 15, 1997, to provide for the first five years to be served without benefits, Defendant committed his offense on May 12, 1997, before the effective date. When the present offense was committed, the penalty provision for possession of cocaine with the intent to distribute did not provide for any portion of the sentence to be served without benefit of probation, parole or suspension of sentence. Thus, the trial court imposed an illegal sentence. Consequently, the sentence should be vacated and the case remanded for resentencing.
We also note that the trial court failed to inform Defendant of the three-year prescriptive period for filing post-conviction relief. This error is moot because of the illegal sentence discussed above. However, we instruct the trial court to inform Defendant of the prescriptive period at resentencing.

ASSIGNMENTS OF ERROR NOS. 1 & 2
By assignments of error numbers 1 and 2, Defendant claims that the evidence *966 presented at trial was insufficient to support the verdict of guilty of possession of cocaine with the intent to distribute and, thus, the trial court erred in its denial of Defendant's motion for post-verdict judgment of acquittal.
Defendant argues that the State failed to present any evidence of an offense other than possession of cocaine. Defendant relies upon factors outlined in State v. House, 325 So.2d 222 (La.1975) to draw this conclusion. In House, the supreme court found that the State had not proven the defendant's intent to distribute marijuana because it had not offered evidence:
(1) that the defendant ever distributed or attempted to distribute any marijuana; (2) that the marijuana was in a form usually associated with marijuana possessed for distribution to others; (3) that the amount was such as to create a presumption of intent to distribute; (4) of expert or other testimony that such an amount as found on the defendant is inconsistent with personal use only; and (5) of any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
Id. at 225.
The court concluded that "there was no evidence from which the jury might legitimately infer that the possession alone of the marijuana was accompanied by the intent to distribute."
Defendant contends that there was no evidence regarding any distribution or attempted distribution on the day of Defendant's arrest. Officer Beebe testified that he had not witnessed Defendant in a hand-to-hand transaction, wherein the cocaine was transferred from one person to another. Evidence of subsequent arrests involving the distribution of rock cocaine was presented at trial, but only for the purpose of impeachment. Defendant argues that the packaging could indicate that Defendant possessed the crack cocaine for personal consumption. However, Detective Coutee, an expert accepted by the court in the field of distribution, packaging and manufacturing of crack cocaine, testified that the most common method of distribution of crack cocaine is hand-to-hand, one rock at a time, which was consistent with the manner in which Defendant's crack cocaine was packaged. Officer Coutee explained how the street dealer gets the rocks to sell, one at a time, as follows:
A Very commonly the, the drug dealers receive a large piece of, either ounce size or smaller, it can be a half ounce or quarter ounce of Crack Cocaine. Usually it's in a cookie form. The smaller amounts to a quarter and a half are broken off of an ounce cookie. A cookie of Crack Cocaine is generally about the size of like a sugar cookie that your grandmother would make or something like that. And it's broken into parts smaller and sold to street level dealers. And they in turn cut pieces, these rock size pieces off that, that cookie or quarter cookie or half cookie.
Q And is that where they get the rocks to sell one at a time?
A Yes.
Next, Defendant claims that the State failed to present evidence that the amount of cocaine found created a presumption of the intent to distribute. Defendant also argues that the State's expert, Lieutenant Coutee, was unable to establish that the amount found was inconsistent with personal use only, because he was not qualified as an expert in the consumption of crack cocaine. However, the qualifications of Lieutenant Coutee are discussed in a subsequent assignment or error so, for the purpose of this argument, we accept that Lieutenant. Coutee is qualified to provide this testimony.
The issue of possession with the intent to distribute as opposed to personal consumption was found in the following line of cases. In State v. White, 98-91 (La.App. 5 Cir. 6/30/98); 715 So.2d 714, writ denied, 98-2043 (La.11/25/98); 729 So.2d 577, the court concluded that thirteen rocks of cocaine *967 was a sufficient amount to support the intent to distribute. The expert in White testified that "a typical cocaine user buys no more than two rocks of cocaine at a time, smokes his purchase, then returns to the dealer for more." Id. at 717. Likewise, this court in State v. Stelly, 96-1296 (La.App. 3 Cir. 4/30/97); 693 So.2d 305, found that fifteen rocks of crack cocaine was sufficient to infer the intent to distribute. In its decision, the court considered the expert testimony that "a pure user typically possesses one or two rocks because the users usually have the rock only long enough to consume it. Typically as soon as a user gets the rock, he or she smokes it." Id. at 311. The expert also testified that "street level dealers often use plastic wrappers to carry their drugs because it is easy to dump the drugs quickly without drawing attention to the bag since it looks like trash." Id. at 311.
Lastly, in State v. Harris, 96-205 (La. App. 3 Cir. 10/9/96); 684 So.2d 1, writ denied, 96-2566 (La.3/21/97); 691 So.2d 81, this court upheld the defendant's conviction for possession with the intent to distribute cocaine wherein officers found six rocks of crack cocaine in a plastic bag in the defendant's jacket. The expert in Harris testified that "a crack user normally has no more than one or two rocks on him at any given time since his primary intent is to use the cocaine," that "a crack user usually carries a crack pipe on his person and that a crack user's cocaine is never packaged," and, further, that "a crack user usually does not have money at the same time." Id. at 4. Also, because the rocks found were unusually big and not the typical size as on the street, the expert opined that it was not normal for a user to possess that much cocaine. Id.
In the instant case, Detective Beebe testified that the plastic bag thrown to the ground by Defendant contained nine pieces of a white rock like substance which was later tested and found to be crack cocaine. Lieutenant Coutee testified that the total value of the cocaine rocks was roughly $180.00. Defendant did not possess a crack pipe on his person to ingest the drugs and nothing was found in the area where he threw the cocaine. Detective Beebe did not see anything leave Defendant's hand other than the plastic bag. Defendant was also carrying $146.00 in cash and $15.00 in food stamps. Lieutenant Coutee opined that the quantity found, coupled with no paraphernalia for its ingestion, was suggestive of the intent to distribute.
Defendant rightly indicates that no paraphernalia was found evidencing an intent to distribute, a factor considered in House. However, the House factors are not an exclusive listing of factors to consider to determine whether the intent to distribute is present.
Evidence regarding the street value and dosage units are also factors to be considered. State v. Spencer, 29,993 (La. App. 2 Cir. 1/21/98); 707 So.2d 96. In Spencer, the defendant was found carrying a large sum of cash, $488.00, and testimony revealed that he was unemployed..
In the present case, Defendant was also found with a large sum of cash and he had told officers following his arrest that he was unemployed. Although Defendant testified at trial that he was employed and had cashed his paycheck on the day of the arrest, no evidence was presented in support of this testimony such, as the testimony of his employer or a payroll receipt.
In light of the case law, a review of the House factors, and the testimony of Lieutenant Coutee, it was not unreasonable for the jury to infer that Defendant possessed the nine rocks of cocaine with the intent to distribute them. Since the jury's verdict was supported by the evidence, the trial court's denial of Defendant's motion for post-verdict judgment of acquittal was proper. For these reasons, we conclude that these assignments are without merit.

*968 ASSIGNMENT OF ERROR NO. 3

By his third assignment of error, Defendant claims that the trial court erred in accepting Lieutenant Larry Coutee as an expert in the field of distribution, packing and manufacturing of crack cocaine.
Defendant claims that the court did not apply the gate keeping standard illustrated by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The standard, which was adopted by the Louisiana Supreme Court in State v. Foret, 628 So.2d 1116 (La.1993), requires that "expert scientific testimony must rise to a threshold level of reliability in order to be admissible under La.C.E. art. 702." Id. at 1123. The Supreme Court recently elaborated on the Daubert standard in Kumho Tire Company, Ltd., et al. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), stating that the gate keeping obligation applies to all expert testimony, as well as scientific testimony.
Defendant argues that the criteria for Lieutenant Coutee to be qualified as an expert were not met because he had not written articles or taught courses in the field and had never been qualified as an expert before. Defendant maintains that Lieutenant Coutee could not testify as to the consumption habits of cocaine users because he testified that he had never been present when cocaine was consumed.
This court has stated in a civil matter that "experience alone is sufficient to qualify a witness as an expert; a college degree is not required." State Thru DOTD v. Wahlder, 94-761 (La.App. 3 Cir. 12/7/94); 647 So.2d 481, 485. See also Manchack v. Willamette Industries, Inc., 621 So.2d 649 (La.App. 2 Cir.), writ denied, 629 So.2d 1170 (La.1993). Furthermore, the "competency of an expert witness is a question of fact within the sound discretion of the trial judge. His assessment of the qualifications of experts will not be disturbed unless clearly wrong." Wahlder, 647 So.2d at 485.
Lieutenant Coutee had been a police officer for twenty-three years and had worked as a narcotics investigator/supervisor for more than ten years. As an investigator, his duties involved participation in actual investigations. Lieutenant Coutee received extensive training at annual conferences of the Louisiana Sheriffs Association Narcotics Task Force and the Louisiana Narcotics Officers Association. He testified about his involvement in an organized crime drug enforcement task force with the drug enforcement administration and that he had been assigned to a task force officer with the Federal Bureau of Investigation, investigating narcotics activity throughout the state and other states. Lieutenant Coutee also received training from the United States Justice Department relating to narcotics investigations. He attended the Louisiana State University Law Enforcement Institute and has attended numerous classes and conferences relating to narcotics activities and investigations.
Lieutenant Coutee testified that about seventy-five percent of his personal involvement in drug investigation deals with cocaine, and that ninety percent of the cocaine investigations involve the crack form of cocaine. He estimated that he personally investigated 200 to 300 cases involving the distribution, the packaging for distribution and the holding for sale or distribution of crack cocaine and has supervised in excess of 300 investigations. From this foundation, Lieutenant Coutee was tendered as an expert in the area of distribution, packaging for distribution, and manufacture for distribution of crack cocaine and was received and qualified as such by the court. We conclude that Lieutenant Coutee's experience alone was sufficient to qualify him as an expert in the field of distribution, packaging, and manufacturing of crack cocaine, and that his experience encompassed the consumption habits of cocaine users.
*969 Defendant also argues that the potential for unfair prejudice of Lieutenant Coutee's testimony outweighed the probative value. La.Code Evid. art. 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
This court in State v. Washington, 96-656 (La.App. 3 Cir. 1/15/97); 687 So.2d 575, addressed this issue. The expert in Washington was a lieutenant detective of the police department and had been with the department in the area of narcotics investigation for over seventeen years. The expert testified about the street value and wholesale value of the cocaine seized, explained how drug couriers are commonly used to transport drugs, described how cocaine is made into crack cocaine, and explained how crack is usually smoked in a straight-shooter. This court found the expert's testimony to be relevant to the case and "was helpful in enabling the jury to understand the evidence presented as well as to determine whether the defendant knowingly and intentionally possessed cocaine." Id. at 581.
We conclude that Lieutenant Coutee's testimony was relevant to the present case and was helpful in enabling the jury to understand the evidence presented, as well as to determine whether Defendant intended to distribute cocaine. Thus, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 4
In his fourth assignment of error, Defendant claims that the trial court erred in overruling his objection to the State's closing argument. Defendant argues that it was improper for the State to argue the substance of the informant's tip in the manner argued when the evidence was introduced at trial for the limited purpose to show why the officers had gone to the location of Defendant's subsequent arrest.
During the trial, Detective Beebe testified about receiving a tip from an anonymous caller and before he could testify as to what the caller said, Defendant raised a hearsay objection that was sustained. The line of questioning began again and Detective Beebe explained, that as a result of the telephone call, he and Officer Van Dyke went to the 700 block of Leland Street looking for a tall, black male with plats in his hair. Defendant again objected. This objection was overruled but the court admonished the jury, stating:
Let me just make an admonition to the jury. What this officer was told on the telephone is not to be considered as true or as evidence that the defendant was committing a crime. It is solely to be used by you to show you why this police officer when (sic) to the 700 block of Leland Street. It's not to be received as the truth of the matter. But he was sitting in the office one minute, the next minute he's at the 700 block of Leland Street. It's just to explain to you why he went there and it's not for the truth of the matter.
In closing, the State argued:
You heard the testimony that these officers who do nothing but investigate street level narcotics crimes, received a telephone call that somebody fitting his description was involved in illegal narcotics activity in the seven hundred block of Leland Street. As little as fifteen but less than an hourfifteen minutes but less than an hour later they arrived in the 700 block of Leland Street.
At this point, Defendant objected, and a sidebar conference, outside the hearing of the jury, was held. Defendant argued that the State was using the information that was previously admitted as substantive evidence of Defendant's guilt and asked for a mistrial. The objection was overruled and Defendant objected to the court's ruling.
*970 The State continued its closing argument as follows:
What happened? They receive a call, they go to investigate. That's what they do for a living. They arrive at the 700 block of Leland Street, what do they find? Ed Quinney Wells, a tall slender black male, with plats or braids in his hair, on a bicycle, in the 700 block of Leland Street.
Again in rebuttal, the State mentioned the anonymous tip, stating:
Mr. Kutch told you that we can't prove intent to distribute and I want to tell you now, don't compromise. He possessed those drugs with the intent to distribute them, don't compromise. What happenedcannot call thetie the call into the defendant. Does the call mean that Ed Quinney Wells was dealing drugs on the 700 block of Leland Street? No. What was the call about? Gave a description of somebody and the defendant matched that description. When they showed up down there that's when they found. Him. Him. Was there anybody else with plats or braids in their hair down there, tall, slim? No. Of course, you can tie the call to the defendant, but we don't need to. That's just to tell you why they went where they went.
In his brief, Defendant relies upon State v. Cousin, 96-2973 (La.4/14/98); 710 So.2d 1065, wherein the supreme court addressed this issue of admitting hearsay testimony during closing argument. In Cousin, the complained of testimony was found to be inadmissible hearsay at trial and during closing argument.
The use of hearsay evidence during closing argument in the case sub judice can be distinguished from the facts of Cousin. The testimony in Cousin involved the use of hearsay testimony to impeach a witness regarding a prior inconsistent statement. The subject matter of the inconsistent statement concerned inculpatory statements made by the defendant to the witness which were confessional in nature. The court noted that the hearsay statements were very strong evidence of the defendant's guilt, and because the remaining evidence of his guilt was weak, the court concluded that the statements improperly influenced the jury.
In Cousin, the hearsay testimony, as stated by the court, was very strong evidence of his guilt because the testimony was essentially a confession, and, as mentioned above, was highly inflammatory as well. In the case at bar, the hearsay testimony was not a confession of Defendant's guilt, although it did encourage the jury to draw inferences with regard to his intent to distribute which is at least arguably one of the purposes of closing arguments. Also, the prosecutor did not urge the jury to accept the testimony as evidence of guilt in his closing argument as did the prosecutor in Cousin.
During the rebuttal argument, the prosecutor commingled his discussion of the hearsay with his urging that the jury not compromise may have crossed the line and his comments could easily be interpreted as urging the jury to accept the information as the truth of the matter asserted. The prosecutor's language at this point becomes more suggestive of Defendant's guilt with regard to his intent to distribute as opposed to telling the jury why the police went where they went.
The scope of an argument is addressed in La.Code Crim.P. art. 774 as follows:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Thus, the State must base its conclusions and deductions in closing argument upon the evidence adduced at trial. However, *971 as stated in State v. Wafer, 31,078 (La. App. 2 Cir. 9/23/98); 719 So.2d 156, "the state and the defendant are permitted to draw their own conclusions as to what the evidence establishes, and both may press upon the jury any view arising out of the evidence." (Citations omitted). Id. at 164. As mentioned in Wafer, it is well established that the trial court has wide discretion in controlling the scope of closing argument, and thus, an appellate court should not reverse on grounds of an improper closing argument unless it is thoroughly convinced that the remark influenced the jury and contributed to its verdict.
In State v. Dabney, 91-2051 (La.App. 4 Cir. 3/15/94); 633 So.2d 1369, writ denied, 94-0974 (La.9/2/94); 643 So.2d 139, the defendant alleged that the trial court admitted inadmissible hearsay concerning information from a confidential informant as follows:
During closing argument, the prosecutor stated:
You heard Detective Rice. You heard about his investigation. He received a phone call from Brenda Handy. He received descriptions from Sandra Tarka. He interviewed Brenda Handy. He received phone calls from confidential informants, all leading to one person and that one person is Allen Dabney.
Id. at 1377.
The court held that the State's references that the sources of information pointed to the defendant was within the scope of permissible closing argument. "The comment is reasonable in light of the factual dispute before the jury, whether the defendant was or was not present at the scene of the crime." Id. at 1377. Although the argument did not disclose the hearsay statements contained in the phone calls as the prosecutor did in the case at bar, the use of the information promoted the inference of the defendant's guilt Likewise, the prosecutor's references to the statements of the unidentified informant used to explain why the police went where they went and that were admitted at trial, promoted the inference of Defendant's intent to distribute but may have exceeded the scope of permissible closing argument.
This court in State v. Colligan, 95-880 (La.App. 3 Cir. 8/7/96); 679 So.2d 184, 189 held that a prosecutor's comments to a jury that they "represent the people of Evangeline Parish and ... it's up to you to return a verdict of guilty ...." were improper. The court held, however, that although improper, the comments alone were not sufficient to reverse the defendant's conviction, stating:
As a general rule, courts are hesitant to reverse convictions on the basis of prosecutorial argument because jurors are generally repeatedly admonished that they must decide the case on the evidence and that the arguments of counsel are not evidence. State v. Duplessis, 457 So.2d 604 (La.1984). Additionally, great faith is placed in the idea that jurors will use their common sense, fair-mindedness, and ability to distinguish meaningful evidence from unwarranted comments. (Cite omitted) However, this does not mean that there will not be instances where prosecutorial comments will rise to such a level as to have influenced the jurors and contributed to the verdict. As pointed out by the supreme court, each case must be determined on an individual basis to determine if the prosecutorial argument was so prejudicial as to require reversal of the defendant's conviction.
Id. at 191.
In summary, we hold that the State's closing argument did not contain statements which exceeded the hearsay exception. We do note that the State comes very close to the line and may have crossed the line as its argument could have easily been interpreted as urging the jury to accept the phone call as evidence of distribution. Nevertheless, it seems clear that the trial judge was in a vastly superior position from which to interpret the *972 ambiguous, perhaps purposefully ambiguous, language used and, thus, we let stand the ruling of the trial court.

DECREE
Defendant's conviction is upheld. We vacate Defendant's sentence and remand this case to the trial court for resentencing in accordance with the views expressed in this opinion. Further, we instruct the trial court to inform Defendant of the prescriptive period for filing post-conviction relief at resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
NOTES
[1] In Docket No. 248,146, Defendant pled guilty to possession of CDS II with the intent to distribute and was sentenced to ten years at hard labor, with the first five years to be served without benefit of probation, parole or suspension of sentence. In Docket No. 252,858, Defendant pled guilty to aggravated battery and was sentenced to serve ten years at hard labor to run concurrent with Docket No. 248,146.