# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-353

STATE OF LOUISIANA

VERSUS

SOLOMON BURKE GUILLORY, JR.

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 114551-F
HONORABLE CHUCK RANDALL WEST, DISTRICT JUDGE

**********

## CHARLES G. FITZGERALD
### JUDGE

**********

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and Charles G. Fitzgerald, Judges.

**AFFIRMED IN PART; VACATED IN PART; REMANDED FOR RESENTENCING.**

**Trent Brignac**
**District Attorney, Thirteenth Judicial District**
**Julhelene E. Jackson**
**Assistant District Attorney**
**Post Office Box 780**
**Ville Platte, Louisiana 70586**
**(337) 363-3438**
**Counsel for Appellee:**
        **State of Louisiana**

**Dayal Reddy**
**2901 Ridgelake Drive, Suite 105**
**Metairie, Louisiana 70002**
**(504) 383-3606**
**Counsel for Defendant/Appellant:**
        **Solomon Burke Guillory Jr.**

**FITZGERALD, Judge.**

In this appeal, Solomon Burke Guillory Jr. (Defendant) appeals his convictions and sentences for possession with intent to distribute crack cocaine, possession with intent to distribute marijuana, and possession of tramadol.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

On January 29, 2019, Defendant was driving a vehicle when he was stopped by police. The police subsequently found several controlled dangerous substances in and around the vehicle.

On February 26, 2019, Defendant was charged by bill of information with the following: (1) possession with intent to distribute methamphetamine, a violation of La.R.S. 40:967; (2) possession with intent to distribute promethazine, a violation of La.R.S. 40:969; (3) possession of less than two grams of marijuana, a violation of La.R.S. 40:966; (4) possession of promethazine, a violation of La.R.S. 40:970; (5) possession of drug paraphernalia, a violation of La.R.S. 40:1023; (6) improper display of a temporary plate, a violation of La.R.S. 47:521; and (7) violating Uniform Controlled Dangerous Substances Law while on property located within a drug free zone, a violation of La.R.S. 40:981.3.

On December 2, 2019, the State filed an amended bill of information which the trial court granted. Counts one through three were amended to (1) possession with intent to distribute crack cocaine, a violation of La.R.S. 40:967; (2) possession with intent to distribute tramadol, a violation of La.R.S. 40:969; and (3) possession with intent to distribute marijuana, a violation of La.R.S. 40:966. The trial court severed counts five and six. Count seven was dismissed.

That same day, on December 2, 2019, a jury trial began on amended counts one through three. On December 4, 2019, Defendant was found guilty of possession with intent to distribute crack cocaine and possession with intent to distribute marijuana. Defendant was also found guilty of the responsive verdict of possession of tramadol.

On February 3, 2020, the trial court sentenced Defendant as follows: (a) for possession with intent to distribute crack cocaine, Defendant was sentenced to serve ten years at hard labor with a fine of $10,000; (b) for possession of tramadol, Defendant was sentenced to serve five years at hard labor with a fine of $2500, and this sentence was ordered to run consecutively with the sentence imposed for possession with intent to distribute crack cocaine; and (c) for possession with intent to distribute marijuana, Defendant was sentenced to serve ten years at hard labor with a fine of $10,000, and this sentence was ordered to run concurrently with the other sentences imposed. Defendant filed a Motion to Reconsider Sentence. The trial court denied the motion, and this appeal followed.

On appeal, Defendant requests a review for errors patent and asserts the following assignments of error:

1.  The State of Louisiana did not establish the proper jurisdiction at trial.

2.  The State of Louisiana did not establish reasonable suspicion for the traffic stop.

3.  The testimony regarding a scale allegedly seized is irrelevant and prejudicial.

4.  The trier of fact erred in finding him guilty.

5.  The sentence is excessive.

## LAW AND ANALYSIS

### I.  Errors Patent

In accordance with La.Code Crim.P. art. 920, we review appeals for errors patent on the face of the record. After reviewing the record, we find no errors patent.

### II.  Assignment of Error No. 4

When a defendant raises issues on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court must first resolve the sufficiency

2

issue. *State v. Hearold*, 603 So.2d 731 (La.1992). Therefore, we will first address Defendant's sufficiency arguments.

In his fourth assignment of error, Defendant asserts that the evidence at trial was insufficient to prove his guilt beyond a reasonable doubt.

A sufficiency of the evidence claim is reviewed on appeal under the standard set forth by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521. The appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

The reviewing court must afford great deference to a jury's decision to accept or reject the testimony. *State v. Sizemore*, 13-529, 13-530 (La.App. 3 Cir. 12/18/13), 129 So.3d 860, *writ denied*, 14-167 (La. 8/25/14), 147 So.3d 699. "'Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.'" *State v. Thomas*, 17-959, pp. 13-14 (La.App. 3 Cir. 9/26/18), 255 So.3d 1189, 1199, *writ denied*, 18-1757 (La. 4/22/19), 268 So.3d 294 (quoting *State v. Allen*, 36,180 (La.App. 2 Cir. 9/18/02), 828 So.2d 622).

### *Summary of the Evidence Adduced at Trial*

Officer David Charlie, of the Mamou Police Department, testified that on January 29, 2019, he initiated a traffic stop after observing a vehicle with an illegible temporary tag. The driver threw "white objects" out of his window as the vehicle was coming to a stop. Officer Charlie smelled what he believed was marijuana as he walked towards

3

the vehicle. When the driver stepped out of the vehicle, Officer Charlie saw a rolled-up cigar on the "driver's side seat." At that point, he handcuffed the driver and placed him inside the back of the patrol car. Officer Charlie returned to the vehicle and picked up the cigar, which he said smelled like marijuana and contained a green leafy substance. Officer Charlie identified Defendant as the driver. Officer Charlie acknowledged there was also a passenger in the vehicle but could not remember his name.

Officer Charlie testified that Mamou Chief of Police Brent Zachery arrived at the scene and assisted him. In addition to the cigar, Officer Charlie explained that he and Chief Zachery found the white objects that were thrown from the driver's window. They also found various other suspicious items inside the vehicle. Officer Charlie was then presented with photographs of the seized items. He testified that the photographs accurately depicted a clear plastic bag containing 3.5 grams of a green leafy substance and a cigar; a jar containing a clear plastic bag with a white substance inside; a clear plastic bag containing a white substance and a razor blade; a jar containing a white substance and a green leafy substance; and a scale that measured in grams. He then identified a bottle of promethazine that was also found inside the vehicle.

When asked about the passenger, Officer Charlie responded that he was cooperative and was not detained. Officer Charlie was unable to recall whether he asked the passenger if the drugs belonged to him. His police report did not reflect any questions being asked of the passenger. Officer Charlie admitted that the cigar was within arm's reach of the passenger. He explained that the police department's standard operating procedure permits handcuffing a driver during routine traffic stops and detaining the passenger when warranted by the circumstances. He admitted that he did not determine ownership of the vehicle, and he agreed it was possible that Defendant borrowed the vehicle and was unaware of the drugs.

4

Chief Zachery testified that he arrived at the scene as Officer Charlie was about to search the vehicle. Chief Zachery observed the search of the vehicle. He then assisted in the search for the items that were thrown out of the vehicle. According to Chief Zachery, Officer Charlie located small white pieces of what appeared to be crystal methamphetamine or crack cocaine in the grass and rocks approximately three feet from the driver's door. The items were placed in an evidence bag. Chief Zachery identified Defendant as the person detained. Chief Zachery confirmed that normal operating procedure involved removing and handcuffing a driver when an officer smells marijuana.

Chief Zachery explained that when he arrived, he dealt with the passenger who was out of the vehicle. Chief Zachery spoke to the passenger but did not handcuff him. According to Chief Zachery, Officer Charlie did not violate procedure by removing and handcuffing the driver but not the passenger. According to Chief Zachery, the passenger exclaimed that "the dope wasn't his." Chief Zachery acknowledged that this information was not included in Officer Charlie's report. Chief Zachery noted that standard operating procedure includes asking for a driver's license, vehicle registration, and proof of insurance. He then explained it was not unusual that the vehicle's registration was not asked for by Officer Charlie because this incident involved an irregular traffic stop—the driver was throwing things out of the window, and the vehicle smelled of marijuana.

Officer Christopher Fruge, also with the Mamou Police Department, testified that he secured the evidence collected by Officer Charlie. Officer Fruge recalled that the police recovered a crystal-like substance believed to be methamphetamine; medication bottles containing green liquid believed to be codeine; a cigar; a green leafy substance believed to be marijuana; a scale; a clear glass jar containing narcotics; and a razor blade. He acknowledged that ten white pills believed to be tramadol were among the items recovered.

5

When questioned about how he would have handled the traffic stop, Officer Fruge responded that he would have placed Defendant in handcuffs because he threw something out of the vehicle and a cigar with green leafy material was in plain sight. Officer Fruge did not hear Chief Zachery or Officer Charlie have a conversation with the passenger. Officer Fruge completed a log sheet and the evidence he received was sent to the Acadiana Crime Lab.

The following exhibits were admitted in evidence by stipulation: the report from the Acadiana Crime Lab; a plastic bag containing one prescription bottle of promethazine; an envelope containing one partially burnt rolled cigar; one plastic bag containing 3.5 grams of marijuana, a Schedule I drug; an envelope containing ten round tablets classified as tramadol, a Schedule IV drug; an envelope containing thirteen rocks or 2.6 grams of crack cocaine, a Schedule II drug; a digital scale, razor blade, piece of plastic bag, empty prescription bottle, and two glass jars; one white oval tablet which was not a controlled substance; and one piece of plastic containing three tablets of loratadine, a noncontrolled substance.

Dominque Lazard also testified at trial. Lazard noted that he is related to Defendant. Lazard admitted that he was the passenger in the vehicle being driven by Defendant at the time of the traffic stop. When asked about the incident, Lazard testified that he was walking to the store to buy cigars when Defendant picked him up. Defendant drove him to the store, and then during the drive home, they were stopped by police. Lazard testified that Officer Charlie approached the driver's side of the vehicle and "got Defendant out." Lazard admitted having on his person the cigars that he had purchased and "a piece of a bud."

Lazard denied owning the vehicle, denied owning the recovered drugs, denied seeing the drugs before the traffic stop, and denied being picked up to buy or sell drugs. He stated that the police never asked him if the drugs were his, but then testified as follows:

Q.    [Y]ou're absolutely certain that the Chief didn't speak to you about whether the drugs were yours or not?

A.    . . . . I'm not certain . . . I don't remember him coming speak to me about that.

Lazard also testified that he did not see Defendant throw anything out of the window. However, he later acknowledged that he said just the opposite in his written statement to police.

De'Andrus Jason, who is Defendant's cousin, provided testimony about the ten tablets of tramadol. Jason explained that on January 29, 2019 (which is the date of the traffic stop), he washed and detailed a Buick vehicle for Defendant. Jason noted that he had a bottle of medically prescribed tramadol in his pocket when he was cleaning the vehicle. He produced a prescription bottle in court dated September 24, 2019. He acknowledged that it was an old bottle. He then explained that the tramadol at issue belonged to him, not Defendant. As Jason put it, he guessed a couple or some of the pills, which were round and white, fell out of his pocket while he was detailing the car. Jason denied carrying loose tramadol in his pocket. So, as he explained, he probably took some pills out of the bottle to ingest them while he was washing the car. He felt that he took two pills from the bottle and then forgot to completely tighten the bottle's safety cap. He denied selling any of these pills to Defendant.

Later in his testimony, Jason was unable to remember the date he detailed Defendant's vehicle, although he acknowledged it was probably before September 2019. When asked if it was possible that he detailed the vehicle on a day that was not January 29, 2019, Jason replied, "I don't remember."

### Possession of Tramadol—Sufficiency of the Evidence

Defendant challenges the sufficiency of evidence to convict him of possession of tramadol.

The State was required to prove beyond a reasonable doubt that Defendant possessed tramadol "knowingly or intentionally." La.R.S. 40:969. Possession is

7

determined by physical possession or constructive possession. *State v. Trahan*, 425 So.2d 1222 (La.1983). Whether there is "possession" sufficient to support a conviction depends on the facts of each case. *Id*. "Actual physical possessing is, of course, sufficient and various cases hold that there may be 'constructive possession,' when the material is not in the physical possession of the person but is under his dominion or control." *Id*. at 1266. By comparison, mere presence in an area where drugs are found or associating with a person who possesses drugs is not considered constructive possession. *State v. Major*, 03-3522 (La. 12/1/04), 888 So.2d 798.

The following factors are utilized when determining whether a defendant exercised sufficient control and dominion over drugs to establish constructive possession: "(1) his knowledge that drugs were in the area; (2) his relationship with the person, if any, found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug consumption; and (5) his physical proximity to drugs." *Major*, 888 So.2d at 802.

The State must also prove guilty knowledge, which means that the defendant has knowledge of the illegal drugs in his possession. *State v. Davis*, 05-543 (La.App. 3 Cir. 12/30/05), 918 So.2d 1186, *writ denied*, 06-587 (La. 10/13/06), 939 So.2d 372. "[S]ince knowledge is a state of mind, it need not be proven as fact, but rather may be inferred from the circumstances." *Major*, 888 So.2d at 803.

Thus, for this court to affirm Defendant's possession of tramadol conviction, we must determine whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that Defendant knowingly or intentionally was in possession of tramadol.

Defendant initially argues that the State failed to establish that he threw anything out of the vehicle.[1] The State disagrees, pointing to the testimony of Officer Charlie and passenger Lazard.

Officer Charlie made the initial stop. He testified that he witnessed the driver throw something white out of the driver's window. Officer Charlie identified Defendant as the driver of the vehicle. In addition, Lazard testified that he was riding as passenger with Defendant when the traffic stop occurred. Lazard testified that he did not see Defendant throw anything out of the window, but later acknowledged that he said just the opposite in his written statement to police.

Defendant next argues that the jury should have found reasonable doubt as to constructive possession and actual knowledge of the tramadol. In support of his argument, he points to Jason's testimony, specifically that the tramadol belonged to him (Jason). The State disagrees, focusing on the credibility of Jason's testimony.

At the outset, there is nothing in the record that identifies the make and model of the vehicle that was pulled over by Officer Charlie on January 29, 2019. Jason originally testified that he detailed a Buick for Defendant earlier that day. He later admitted that he could not be sure of the exact date, but it was probably before September 2019.

Also, according to the testimony of Officer Fruge, the narcotics found inside the vehicle—including the ten tramadol tablets—were in plastic bags located inside the center console. Yet Jason's testimony was that ten of his prescribed tramadol tablets must have fallen out of the prescription bottle, which was in his pocket, because he did not properly replace the childproof cap after he opened the bottle to take two pills. But even such a story does not explain how the tramadol tablets ended up in plastic bags located in the vehicle's center console.

---

[1] Even though this argument relates to possession of crack cocaine, we will address it in this section of the opinion.

In *Major*, 888 So.2d 798, the Louisiana Supreme Court held that the evidence supported a finding of constructive possession based on the driver's dominion and control over cocaine found under the dashboard and above the glove box. The court explained: "As driver and ostensible renter of the vehicle, the defendant had complete and authorized access to the glove box and dashboard area where the drugs were found. Furthermore, the location of the drugs was within the reach and accessible to the defendant as the driver." *Id*. at 803.

Likewise, Defendant here had complete and authorized access to the center console where the drugs were found. The location of the tramadol was within the reach and accessible to Defendant as driver. The testimony that the vehicle smelled like marijuana, along with a suspicious looking cigar on the driver's seat, provides additional proof of Defendant's knowledge of drugs in the vehicle. Thus, the jury could have found that Defendant had knowledge of, and dominion and control over, the ten tablets of tramadol.

Based on the foregoing, we conclude that a rational trier of fact could have found proof beyond a reasonable doubt that Defendant was guilty of the crime of possession of tramadol. It was the jury's prerogative to assess the credibility of the witnesses and to accept or reject their testimony. We will not second guess the jury's credibility determinations nor will we impinge on its role as factfinder. Accordingly, Defendant's possession of tramadol conviction is affirmed.

### Possession with Intent to Distribute Crack Cocaine and Marijuana— Sufficiency of the Evidence

Defendant was also convicted of possession with intent to distribute both crack cocaine and marijuana. Our previous discussion as to the sufficiency of evidence for the possession of tramadol conviction also applies to the "possession" element for these two offenses. Therefore, our discussion will be limited to the "intent to distribute" element of the offenses.

10

"The offense of possession with intent to distribute a controlled dangerous substance is comprised of two elements: (1) a knowing and intentional possession of the substance (2) with a specific intent to distribute it." *State v. Taylor*, 16-1124, 16-1183, p. 16 (La. 12/1/16), 217 So.3d 283, 295. "Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred." *Hearold*, 603 So.2d at 735.

For this court to affirm Defendant's convictions of possession with intent to distribute, we must determine whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that Defendant knowingly and intentionally was in possession of the controlled substances with a specific intent to distribute them.

Defendant contends there was no evidence that he distributed or attempted to distribute the drugs. The State disagrees, pointing out that the police seized 3.5 grams of marijuana, 2.6 grams of crack cocaine, ten tramadol tablets, a scale, and a razor blade. Under the factors noted in *Hearold*, 603 So.2d 731, the State argues that the evidence is sufficient to prove Defendant's intent. We note that Defendant does not challenge the finding that he was in possession of marijuana and crack cocaine. Rather, he challenges the State's proof of his intent to distribute both. Accordingly, we will now apply the *Hearold* factors to determine whether the State met its burden of proving intent to distribute a controlled dangerous substance. These factors are useful in determining whether circumstantial evidence is sufficient to prove this element of the crime.

The first factor is "whether the defendant ever distributed or attempted to distribute the drug." *Hearold*, 603 So.2d at 735. On review, there was no evidence presented to the jury suggesting that Defendant had ever distributed or attempted to distribute the marijuana or crack cocaine. Those drugs were found following a traffic stop. The marijuana was found inside the center console of the vehicle. The thirteen

11

rocks identified as crack cocaine were found scattered about on the ground a few feet from the roadway. Also, despite Lazard's testimony that he may have possessed a bud, he denied being picked up by Defendant to engage in a drug deal.

The second factor is "whether the drug was in a form usually associated with possession for distribution." *Hearold*, 603 So.2d at 735. In this case, the State did not present testimony explaining how marijuana and crack cocaine are packaged for distribution. The marijuana found in the vehicle was contained in a single bag. The crack cocaine was scattered about on the ground in close proximity to the vehicle.

The third factor is "whether the amount of drug created an inference of an intent to distribute." *Hearold*, 603 So.2d at 735. "In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible." *Id.* at 735-36.

In this case, Defendant was in possession of 3.5 grams of marijuana. We find that amount does not create an inference of specific intent to distribute marijuana based on the jurisprudence. In *State v. Howard*, 49,965 (La.App. 2 Cir. 6/24/15), 169 So.3d 777, eighteen grams of marijuana was not large enough to create an inference of intent to distribute. Although the second circuit ultimately affirmed the conviction for intent to distribute marijuana, its holding was based on other factors. In *State v. Gilbert*, 02-922 (La.App. 5 Cir. 1/28/03), 839 So.2d 250, three grams of marijuana was not enough to support an inference of intent to distribute. And in *State v. Jack*, 97-351 (La.App. 3 Cir. 10/8/97), 700 So.2d 1177, *writ denied*, 97-2726 (La. 2/13/98), 706 So.2d 993, a panel of this court held that an amount of marijuana sufficient to roll approximately thirty to forty hand-rolled cigarettes was not enough to create an inference of intent to distribute.

Defendant was also in possession of 2.6 grams, or thirteen rocks, of crack cocaine. In *State v. Stelly*, 96-1296 (La.App. 3 Cir. 4/30/97), 693 So.2d 305, this court

12

determined that fifteen rocks of crack cocaine was sufficient to create an inference of intent to distribute. The expert in *Stelly* testified that "a pure user does not normally possess fifteen (15) rocks of crack cocaine, weighing 2.37 grams." *Id*. at 311. He stated that "a pure user typically possesses one or two rocks because the users usually have the rock only long enough to consume it." *Id*. Likewise, in *State v. White*, 98–91 (La.App. 5 Cir. 6/30/98), 715 So.2d 714, *writ denied*, 98–2043 (La.11/25/98), 729 So.2d 577, the court concluded that thirteen rocks of cocaine was sufficient to support the finding of intent to distribute. The expert in that case testified that "a typical cocaine user buys no more than two rocks of cocaine at a time, smokes his purchase, then returns to the dealer for more." *Id*. at 717.

By contrast, the prosecution in the case before us failed to present any testimony concerning the consumption habits of a typical user of crack cocaine. Without this foundational evidence, there is no basis to support an inference of Defendant's intent to distribute crack cocaine.

The fourth factor is "whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only." *Hearold*, 603 So.2d at 735. There was no testimony, expert or otherwise, that addressed this factor.

The fifth factor is "whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute." *Hearold*, 603 So.2d at 735. The officers found, along with the crack cocaine and marijuana, a razor blade, jars, a medicine bottle, a piece of plastic bag, and a scale inside the vehicle. However, no testimony was adduced as to how any of these items could be utilized to distribute drugs.

In *Gilbert*, 839 So.2d 250, there was testimony that several zip-lock baggies labeled with an eight-ball symbol were found with the marijuana. A police officer testified the bags were nickel bags that would hold five dollars' worth of marijuana and were used for packaging and reselling. The fifth circuit determined that the evidence

13

was insufficient to convict the defendant for attempted possession of marijuana with intent to distribute. The court explained there was no evidence that Mr. Gilbert had ever distributed or attempted to distribute drugs in the past, the total amount of marijuana was approximately three grams, and no expert evidence was produced to show that the amount of marijuana was inconsistent with personal use only.

In *Decuir*, 599 So.2d 358, there was testimony that the drug paraphernalia found was used by those who distribute or prepare to distribute cocaine. The paraphernalia included plastic bags, a scale, isotope powder used as a cutting agent for cocaine, an item used to purify cocaine, a large mirror, razor blades, a calculator, and Vitamin B. This court concluded that the evidence was insufficient to convict Mr. Decuir for possession of cocaine with intent to distribute. This conclusion was based, in part, on the lack of evidence that Mr. Decuir had ever distributed or attempted to distribute cocaine in past, the lack of records indicating drug transactions, and the lack of testimony that the amount of cocaine found was inconsistent with personal use only.

In *State v. McIntyre*, 544 So.2d 86 (La.App. 3 Cir. 1989), the defendant was found to be in the possession of 7.75 grams of crack cocaine, and the only drug paraphernalia was a scale. This court held there was not enough evidence to prove the "intent to distribute" element even though the cocaine found on the defendant was packaged in plastic bags.

We conclude that a rational trier of fact could not have concluded beyond a reasonable doubt, solely on the evidence in the record, that Defendant was guilty of the "intent to distribute" element of the two crimes. Rather, we hold that the evidence, viewed in a light most favorable to the State, supports a conviction of a lesser included responsive offense. La.Code Crim.P. art. 821(E).

The responsive verdicts for both possession with intent to distribute marijuana and possession with intent to distribute crack cocaine include guilty of possession of controlled dangerous substances. Louisiana Code of Criminal Procedure Article

14

814(B)(2) specifically states: "[F]or any offense arising under the Uniform Controlled Dangerous Substances Law that is graded according to the weight of the substance, the responsive verdicts shall include grades of the offense that are based on lesser weights than the weight of the substance that is charged in the indictment."

Possession of marijuana is governed by La.R.S. 40:966, which states:

C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule I unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner or as provided in R.S. 40:978, while acting in the course of his professional practice, or except as otherwise authorized by this Part. Any person who violates this Subsection with respect to:

. . . .

(2) A substance classified in Schedule I that is marijuana . . . shall be punished as follows:

(a) On a first conviction, wherein the offender possesses fourteen grams or less, the offender shall be fined not more than three hundred dollars, imprisoned in the parish jail for not more than fifteen days, or both.

. . . .

(c) Any person who has been sentenced under the provisions of Subparagraph (a) or (b) of this Paragraph and who has not been convicted of any other violation of a statute or ordinance prohibiting the possession of marijuana for a period of two years from the date of completion of sentence, probation, parole, or suspension of sentence shall not have the conviction used as a predicate conviction for enhancement purposes. The provisions of this Paragraph shall occur only once with respect to any person.

The verdict of guilty of possession with intent to distribute marijuana explicitly reflects the finding that Defendant knowingly or intentionally possessed marijuana, and Defendant has not challenged that finding. *See State v. Fobb*, 11-1434 (La.App. 3 Cir. 6/6/12), 91 So.3d 1235. Thus, we enter a verdict of guilty of possession of marijuana and remand for sentencing thereon.

The responsive verdicts for possession of marijuana with intent to distribute provided to the jury did not list the grades of the offense for possession of marijuana by weight, and its weight was not listed in the amended bill of information. The record

evidence indicates that Defendant possessed 3.5 grams of marijuana, which is clearly less than fourteen grams. Accordingly, no issue as to the applicable sentencing provision is raised by the entry of a verdict of possession of marijuana.

As to crack cocaine, possession of this drug is governed by La.R.S. 40:967, which states:

> C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in the course of his professional practice, or except as otherwise authorized by this Part. Any person who violates this Subsection with respect to:
>
> (1) An aggregate weight of less than two grams, shall be imprisoned, with or without hard labor, for not more than two years and, in addition, may be sentenced to pay a fine of not more than five thousand dollars.
>
> (2) An aggregate weight of two grams or more but less than twenty-eight grams shall be imprisoned, with or without hard labor, for not less than one year nor more than five years and, in addition, may be sentenced to pay a fine of not more than five thousand dollars.

The verdict of guilty of possession with intent to distribute crack cocaine explicitly reflects the finding that Defendant possessed crack cocaine, and Defendant has not challenged that finding. *See Fobb*, 91 So.3d 1235. Thus, we enter a verdict of guilty of possession of crack cocaine and remand for sentencing thereon.

Sentencing for possession of crack cocaine is based on aggregate weight. The amended bill of information did not set forth the amount of crack cocaine Defendant allegedly possessed, and the verdict form did not call for the jury to make such a determination. The report from the Acadiana Crime Lab states that the crack cocaine seized by police weighed 2.6 grams. However, the decisions of the United States Supreme Court make clear that the trial court cannot rely on a lab report when imposing Defendant's sentence for possession of crack cocaine.

In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), the Supreme Court held that any fact other than a prior conviction that increases the penalty for a

16

crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. In subsequent cases, the Supreme Court has applied the principle set out in *Apprendi* in other contexts, including capital sentencing regimes, state and federal sentencing guidelines, and criminal fines. *See, e.g., Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428 (2002); *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004); *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005); and *Southern Union Co. v. United States*, 567 U.S. 343, 132 S.Ct. 2344 (2012).

In *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151 (2013), the Supreme Court concluded that any fact that increases the minimum penalty for a crime is an element that must be submitted to the jury and found beyond a reasonable doubt.

In *United States v. Sheppard*, 219 F.3d 766 (8th Cir. 2000), *cert. denied*, 51 U.S. 1200, 121 S.Ct. 1208 (2001), the Eighth Circuit held that under *Apprendi,* quantity in federal drug offenses must be treated as an element if the quantity increases the maximum sentence for the offense. The court found the any failure to treat the drug type and quantity as an element of the crime and to submit it to the jury was harmless because the indictment charged the defendant with conspiring to distribute more than 500 grams, and the jury made a special finding of that quantity.

Our case is distinguishable because the quantity of crack cocaine was not set forth in the amended bill of information, and the jury did not make a specific finding as to quantity. Because the jury did not determine the quantity of crack cocaine possessed by Defendant, and because the quantity determines the sentencing range for the offense, we hold that Defendant must be sentenced under La.R.S. 40:967(C)(1). Accordingly, we remand the matter to the trial court for sentencing under La.R.S. 40:967(C)(1).

**III.   Assignment of Error No. 1**

In his first assignment of error, Defendant asserts that the State did not establish the proper jurisdiction at trial. He argues that establishing the parish of jurisdiction is an essential element that the State must prove. We disagree.

This argument was made in *State v. Ford*, 17-471 (La.App. 1 Cir. 9/27/17), 232 So.3d 576, 584, *writ denied*, 17-1901 (La. 4/22/19), 268 So.3d 295, wherein the first circuit explained as follows:

> Venue is not an essential element of the offense; rather, it is a jurisdictional matter. *See* La. Code Crim. P. arts. 611(A) & 615. Objections to venue must be raised by a motion to quash to be ruled on by the court in advance of the trial. *State v. Roblow,* 623 So.2d 51, 55 (La. App. 1st Cir. 1993). The defendant did not file a pretrial motion to quash, objecting to venue. Accordingly, this issue is not properly before this court. *See State v. Rideout,* 42,689 (La. App. 2nd Cir. 10/31/07), 968 So.2d 1210, 1212-13, *writ denied,* 2008-2745 (La. 9/25/09), 18 So.3d 87; *State v. Matthews,* 632 So.2d 294, 296 (La. App. 1st Cir. 1993).

In *State v. Thompson*, 12-1097 (La.App. 3 Cir. 4/10/13), 111 So.3d 580, *writ denied*, 13-1067 (La. 11/15/13), 125 So.3d 1102, *cert. denied*, 572 U.S. 1091, 134 S.Ct. 1942 (2014), the defendant claimed the trial court erred when it instructed the jury that jurisdiction was not an issue for its consideration. This court disagreed, explaining that neither venue nor jurisdiction were elements of the charged offense. Because Mr. Thompson failed to file a motion to quash, he failed to preserve the issue of jurisdiction and venue for review on appeal.

The record in the case before us does not contain a motion to quash, and Defendant did not otherwise challenge venue or jurisdiction in the trial court. Therefore, this assignment of error was not properly preserved for review.

## IV.    Assignment of Error No. 2

In his second assignment of error, Defendant asserts that the State did not establish reasonable suspicion for the traffic stop. He argues that the sole reason for the traffic stop was the inability of Officer Charlie to read the temporary license plate. Defendant insists that Officer Charlie had no objective basis for reasonable suspicion. The State disagrees.

The Fourth Amendment to the United States Constitution and Section 5 of Article 1 of the Louisiana Constitution protect against unreasonable searches and seizures. "The authority and limits of the [Fourth] Amendment apply to investigative stops of

18

vehicles[.]" *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568 (1985). The remedy for a Fourth Amendment violation is generally the exclusion of the unlawfully obtained evidence. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407 (1963).

In *State v. Quimby*, 419 So.2d 951, 959 (La.1982), the supreme court declared:

> When tangible objects are sought to be excluded from evidence on the basis of an unconstitutional search or seizure, a defendant must timely file a motion to suppress such evidence. Otherwise, he is deemed to have waived any objection to its admission based on an infirmity in the search and seizure. Since no motion to suppress was timely filed in the instant case defendant cannot now complain on appeal that the objects were seized pursuant to an unconstitutional search. *State v. Williams*, 362 So.2d 530 (La.1978); *State v. Johnson*, 333 So.2d 286 (La.App.1976).

In *State v. Williams*, 08-801 (La.App. 4 Cir. 12/3/08), 1 So.3d 615, which Defendant cites in his brief, the fourth circuit addressed the defendant's claim that evidence seized as the result of a traffic stop should have been suppressed. In its analysis, the court noted:

> Counsel did not file a motion to suppress the evidence, but argued at the hearing that Officer Sentino had no legal basis to stop the Jaguar. Accordingly, there was no express ruling on a motion to suppress. However, defendant argues, the district court implicitly denied suppression of the evidence when the court ruled that there was probable cause to hold defendant for trial on all three counts.

*Id*. at 617 n.2.

The record in this case does not contain a motion to suppress, and Defendant makes no mention of, or argument regarding, a ruling as to probable cause or any implicit denial of suppression of the evidence. Accordingly, this assignment of error was not properly preserved for review.

## V.    Assignment of Error No. 3

In his third assignment of error, Defendant contends that "[t]he testimony regarding a scale allegedly seized is irrelevant and prejudicial." In support, Defendant asserts that the scale was not admitted in evidence, and its mention by the State is prejudicial. We disagree.

Contrary to Defendant's assertion, the scale was admitted into evidence as State Exhibit 5.5. As such, this assignment lacks merit.

## VI. Assignment of Error No. 5

In his fifth assignment of error, Defendant contends his sentence is excessive. Because Defendant's convictions for possession with intent to distribute crack cocaine and possession with intent to distribute marijuana are vacated, we will address only the excessiveness of the sentence imposed for possession of tramadol.

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). Louisiana Constitution Article 1, § 20 provides that "[n]o law shall subject any person to . . . cruel, excessive, or unusual punishment." A sentence is excessive when the reviewing court finds "the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering." *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331. The trial court has great discretion in imposing a sentence, which will not be set aside as excessive absent a manifest abuse of discretion. *Id*.

Louisiana Code of Criminal Procedure Article 894.1 enumerates aggravating and mitigating factors to be considered by the trial court in imposing sentence and requires that the trial court "shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence." La.Code Crim.P. art. 894.1(C). "While the trial judge need not articulate every aggravating and mitigating circumstance outlined in [La.Code Crim.P.] art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983).

20

When reviewing a defendant's sentence, an appellate court considers the nature of the crime, the nature and background of the offender, sentences imposed for similar crimes, and the legislative purpose behind the punishment. *State v. Smith*, 99-606 (La. 7/6/00), 766 So.2d 501. While comparing sentences imposed for similar crimes provides insight, sentences must be individualized to the particular offender and to the particular offense committed. *State v. Marshall*, 94-461 (La. 9/5/95), 660 So.2d 819. "A trial judge has broad sentencing discretion because he or she remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784, p. 2 (La. 5/31/96), 674 So.2d 957, 958, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996). "The mere fact that the sentence is the maximum statutory penalty is not dispositive that the sentence is cruel or unusual." *State v. Clark*, 19-136, p. 5 (La.App. 3 Cir. 10/2/19), 280 So.3d 673, 678.

Possession of tramadol is punishable by imprisonment with or without hard labor for not less than one year nor more than five years and a possible fine of not more than five thousand dollars. La.R.S. 40:969(C)(2). While the trial court imposed the maximum term of five years at hard labor, the fine of two thousand five hundred dollars was one-half of what could have been imposed.

At the sentencing hearing, the trial court noted that it had ordered and considered the presentence investigation report (PSI). The court then addressed Defendant's prior convictions, beginning in 2003, when Defendant was arrested in Evangeline Parish and pled guilty to possession of a Schedule I controlled dangerous substance (CDS); he was sentenced to six months in jail. In 2006, Defendant was arrested in Mamou and pled guilty to possession of a Schedule II CDS and resisting an officer; he was sentenced to five years at hard labor with three years suspended and five years of active supervised probation. In 2009, Defendant was arrested in Texas and pled guilty to possession of marijuana; he was sentenced to two years in jail. In 2010, Defendant was again arrested in Texas and pled guilty to unlawful possession of dangerous drugs; he was sentenced

21

to ten days in jail. In 2011, Defendant was arrested in Evangeline Parish and pled guilty to possession of marijuana, second offense; he was sentenced to four years at hard labor. In 2012, he was again arrested in Evangeline Parish and pled guilty to possession with intent to distribute marijuana; he was sentenced to three years at hard labor. In 2013, he was arrested in St. Landry Parish and pled guilty to possession of marijuana; he was sentenced to six months in jail. The trial court also noted that numerous charges were pending at the time of sentencing, including carjacking, carrying a concealed weapon by a convicted felon, and other drug charges in Evangeline Parish; possession of a CDS in Texas; and manufactured distribution or possession of a Schedule I CDS in Calcasieu Parish. The PSI reflected that possession of tramadol was Defendant's fourth felony offense.

At the sentencing hearing, Defense counsel asserted that Defendant was thirty-four years old; that Defendant had graduated high school and received vocational training in heating, ventilation, and air conditioning (HVAC); that Defendant had family support; that Defendant was a father to three children with another child on the way; and that Defendant had financially supported his family. Defense counsel claimed that the amounts of crack cocaine and marijuana were not significant, and the tramadol tablets belonged to someone else. As to the pending charges, Defense counsel noted that these charges were merely allegations, and Defendant was presumptively innocent.

In imposing sentence, the trial court stated that Defendant was a repeat offender. The trial court then explained that Defendant's prior offenses portray a history of his failure to respond to correctional treatment. The trial court noted that Defendant's previous crimes endangered the public, and that he would likely commit future crimes without correctional treatment in an institution. The trial court sentenced Defendant for possession of a Schedule II CDS (tramadol), in violation of La.R.S. 40:969, to five years at hard labor with a fine of two thousand five hundred dollars. The sentence was

ordered to run consecutively with the sentence for possession with intent to distribute a Schedule II CDS (crack cocaine).

On appeal, Defendant argues that the PSI was not made a part of the record for review, and his attorney was not provided with a copy of the PSI for consideration in writing his brief. He also asks this court to consider the facts of his prior convictions. He suggests that a review of the prior convictions will reflect "grossly ineffective assistance of counsel that led to unwise plea agreements which are being held against [him] today."

In response, we first address the PSI. The PSI is generally not included in the appellate record, and this court does not provide appellate counsel with a copy of the PSI for preparation of briefs. In *State v. Stogner*, 03-1272 (La.App. 3 Cir. 2/18/04), 866 So.2d 397, this court held that a defendant does not have an absolute right to review the PSI. However, under certain circumstances, a defendant is entitled to at least know the information contained therein, but the sentencing court is in the best position to determine what information from the PSI, if any, should be made available to appellate counsel for preparation of briefs. *Id*.

Even though defense counsel did not object at the time sentence was imposed, a Motion to Reconsider Sentence was filed thereafter on Defendant's behalf. In the motion, counsel simply states that Defendant's sentence is excessive. Because Defendant's specific complaint regarding his prior guilty pleas was not raised in his motion, he is precluded from now raising this complaint on appeal. La.Code Crim.P. art. 881.1(E); *Clark*, 280 So.3d 673.

Defendant possessed ten tramadol tablets along with marijuana and crack cocaine. The PSI classifies Defendant as a fourth offender, which clearly indicates his inability to respond to correctional treatment. Several of his prior convictions involve narcotics. "Past records of drug offenses should weigh heavily in the decision to uphold

23

the imposition of maximum sentences." *State v. Jones*, 33,111, p. 4 (La.App. 2 Cir. 3/1/00), 754 So.2d 392, 394, *writ denied,* 00-1467 (La. 2/2/01), 783 So.2d 385.

Our review of the sentencing transcript reveals that the trial court considered the factors found in La.Code Crim.P. art. 894.1 in particularizing the sentence now in question. Accordingly, we conclude that the trial court did not abuse its wide discretion in sentencing Defendant to the maximum term of five years at hard labor with a fine of $2500. Defendant's sentence is affirmed.

## DISPOSITION

For the reasons assigned above, Defendant's conviction and sentence for possession of tramadol is affirmed. However, Defendant's convictions and sentences for possession with intent to distribute marijuana and possession with intent to distribute crack cocaine are vacated, verdicts of possession of marijuana and possession of crack cocaine are entered, and the matter is remanded for sentencing thereon.

**AFFIRMED IN PART; VACATED IN PART;
REMANDED FOR RESENTENCING.**


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3 Uniform Rules, Court of Appeal.